# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **E.R.,** *a minor with Olga Alcantara as her next of friend*, **and** **OLGA ALCANTARA**, *on her own behalf*, | § § § § | |
| *Plaintiffs*, | § § | |
| **v.** | § § | **EP-18-CV-00298-DCG** |
| **MARCO JASSO,** **JOSE RIVAS, and** **RICARDO VILLAGRAN,** | § § § § | |
| *Defendants.* | § | |

## NOTICE REGARDING PLAINTIFF'S EX PARTE COMMUNICATIONS WITH THE COURT

With very limited exceptions, the Code of Conduct for United States Judges forbids litigants from making "ex parte communications"—that is, from communicating with the Court (or its employees) without including the other parties.[1]  In this case, Defendants have expressed concerns that *pro se* Plaintiff Olga Alcantara may have made improper ex parte communications with employees in the Clerk of Court's office.[2]

---

[1] *See Communication*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining an "ex parte communication" as a "communication between counsel or a party and the court when opposing counsel or party is not present," and noting that "[s]uch communications are ordinarily prohibited").

*See also* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4) (providing (with limited exceptions) that "a judge should not initiate, permit, or consider ex parte communications"); *id.* § 3A(4) cmt. (stating that "[a] judge should make reasonable efforts to ensure that . . . court personnel comply with" the Code of Conduct's prohibitions on ex parte communications).

[2] *See* Defs.' Proposed Trial Dates, ECF No. 180, at 2–4; *see also infra* Section I.G.1.

All page citations in this Notice refer to the page numbers assigned by the Court's CM/ECF system rather than the document's internal pagination.

After investigating the matter, the Court concludes that Ms. Alcantara did in fact make ex parte communications with the Court in violation of the Judiciary's ethical rules.[3] The Court therefore issues this Notice to inform Defendants of the contents of those communications and give Defendants a chance to respond (if they choose).[4]

Troublingly, this isn't the first time Ms. Alcantara has made ex parte communications that violate the Judiciary's Code of Conduct. As the Court explains below, the Court admonished Ms. Alcantara three times before today not to communicate with the Court or its employees without including the other parties.[5]

This Notice thus serves as Plaintiffs' **final warning** not to communicate with the Court or its employees without including Defendants' attorneys. If Ms. Alcantara or her co-Plaintiff Evelyn Ramirez[6] correspond with Court personnel in the future, they must copy Defendants' attorneys as additional recipients. If either Plaintiff makes ex parte communications that violate this Order and the Judiciary's ethical rules going forward, the Court will consider imposing

---

[3] *See infra* Section II.A.

[4] *See* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4) ("If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested.").

[5] *See infra* Section II.B.

[6] Because Ms. Ramirez is no longer a minor, the Court will refer to her by her full name (rather than by her initials, as the case caption does). *See, e.g.*, Resp. Mot. Summ. J., ECF No. 94, at 2 n.1.

sanctions against the party making that communication.[7]  Such sanctions may include—but aren't necessarily limited to—dismissing that party's claims.[8]

Besides violating the ethical prohibition against ex parte communications, Ms. Alcantara's communications with the Court are also problematic for an additional reason:  As the Court's employees have *also* told Plaintiffs multiple times,[9] emailing the Clerk's office is not a permissible method for filing a motion or otherwise seeking relief from the Court—*irrespective* of whether Plaintiffs copy Defendants on those emails.

Thus, just as this Notice serves as Plaintiffs' final warning not to make ex parte communications, it also serves as Plaintiffs' **final warning** that if they seek relief from the Court, they must do so by filing a *formal motion* that complies with the Court's rules and procedures—**NOT** by sending the Court an email.  As outlined below, the Clerk's office has educated Ms. Alcantara several times about her various options for filing documents as a *pro se* litigant.[10]  If either Plaintiff attempts to bypass the Court's filing procedures going forward, the

---

[7] *Cf., e.g.*, *Kaufman v. Am. Fam. Mut. Ins. Co.*, No. 05-cv-02311, 2008 WL 4980360, at *4 (D. Colo. Nov. 19, 2008) (sanctioning litigant for improper ex parte communications with court personnel), *aff'd*, 601 F.3d 1088 (10th Cir. 2010).

The Court recognizes that Ms. Alcantara made the offending communications discussed in this Order, not Ms. Ramirez.  The Court has no desire to penalize Ms. Ramirez for Ms. Alcantara's actions.

However, the Court nonetheless puts Ms. Ramirez on notice that if she personally communicates ex parte with the Court going forward, then she too may face adverse consequences.

[8] *See, e.g.*, FED. R. CIV. P. 41(b) (authorizing a federal court to "dismiss [an] action" "[i]f the plaintiff fails to . . . comply with . . . a court order").

[9] *See infra* Sections I.F, II.B.1 & 3.

[10] *See infra* Sections I.B, D, & F.

Court will consider imposing sanctions against that party. Such sanctions may likewise include—but aren't necessarily limited to—dismissing that Plaintiff's claims.[11]

### I.    BACKGROUND

On April 22, 2024, the Court ordered the parties to (1) confer regarding their respective availabilities for trial and (2) jointly file a list of mutually acceptable trial dates by May 6, 2024.[12] Ms. Alcantara then made the following ex parte communications with the Clerk of Court's office:

**A.    Ms. Alcantara's April 25, 2024 Email**

First, Ms. Alcantara sent the following email to one of the Court's Operating Clerks on April 25, 2024:

*            *            *

Good Afternoon,

I currently do not have an attorney for this case (pro se) and would like to e-file. Could you please provide me with the necessary information to begin this process? Or … how would I inform the court/judge that [my daughter and co-Plaintiff Evelyn Ramirez] is medically not able to physically attend any conferences or court hearings at this moment?

Thank you,
Olga Alcantara[13]

*            *            *

Ms. Alcantara didn't copy Defendants' Counsel on that email.

---

[11] *See, e.g.*, *Wells v. Gourmet Servs. Inc.*, 748 F. App'x 235, 239, 240–42 (11th Cir. 2018) (dismissing case because plaintiff repeatedly "attempt[ed] to submit filings via email directly to the court after being explicitly instructed not to do so").

[12] *See* Order Confer, ECF No. 179, at 1.

[13] The Court has corrected minor punctuation errors in each of the emails reprinted in this Notice.

The Operating Clerk whom Ms. Alcantara emailed on April 25, 2024 isn't the primary employee assigned to this case.[14]  Thus, rather than responding to Ms. Alcantara's email, the Operating Clerk forwarded it to his supervisor—*i.e.*, to the Court's Deputy Clerk—the following morning.

## B.  The Deputy Clerk's First Phone Conversation With Ms. Alcantara

Shortly after the Operating Clerk forwarded Ms. Alcantara's email to the Deputy Clerk on April 26th, Ms. Alcantara called the Clerk's office.  During that call, the Deputy Clerk attempted to explain that *pro se* litigants have three options for filing documents.[15]  He first stated that Ms. Alcantara could apply for privileges to file documents electronically *via* the Court's CM/ECF system.[16]  He then explained that, even without CM/ECF privileges, *pro se* litigants may still file documents traditionally by either mailing them to the Clerk's office or filing them in person.  However, before the Deputy Clerk could tell Ms. Alcantara that *pro se* litigants without CM/ECF privileges also have the third option of submitting filings electronically *via* the Court's "Pro Se Drop Box" (also known as "Box.com"),[17] Ms. Alcantara

---

[14] The Operating Clerk in question is assigned to cases with numbers ending in 5 and 6.  This case ends with an 8.  Thus, while the Operating Clerk may *occasionally* perform work on this case when the employee assigned to cases ending in 8 is unavailable, he is not the primary employee assigned to this case.

[15] As far as the Court is aware, there are no audio recordings of Ms. Alcantara's telephonic conversations with the Deputy Clerk.  The Court therefore bases its description of those calls on the Deputy Clerk's accounts of those conversations.

[16] *See* Application for Permission to File Electronically, https://www.txwd.uscourts.gov/wp-content/uploads/Filing%20Without%20an%20Attorney/Pro%20Se%20Manual/m.%20Permission%20to%20File%20Electronically.pdf.

[17] *See* Electronic Submission for Pro Se Filers, https://www.txwd.uscourts.gov/filing-without-an-attorney/electronic-filing-for-pro-se/.

accused the Clerk's office of treating her unfairly by not letting her file documents *via* email. Ms. Alcantara then terminated the conversation.

**C.      Ms. Alcantara's April 29, 2024 Email**

On April 29, 2024, Ms. Alcantara sent the following email to the same Operations Clerk whom she had emailed on April 25th:

*      *      *

Good Afternoon,

I sent an email last week requesting how I would be able to communicate with the court / judge since I am currently pro se.  Evelyn is incapacitated at the time and is unable to attend any court hearings physically or via zoom.  I have a letter from a medical doctor that states this information.  I will attach this letter as well.

Olga Alcantara

*      *      *

The letter referenced in that email is a note from Ms. Ramirez's doctor, who attests that Ms. Ramirez "is currently recovering from a severe traumatic brain injury" and is therefore not "fit to attend any court proceedings" in person or by videoconference.

Ms. Alcantara didn't copy Defendants' Counsel on her April 29, 2024 email either.[18] The Operations Clerk—who, to reiterate, isn't assigned to this case—once again forwarded Ms. Alcantara's message to the Deputy Clerk so that he could address it.

---

[18] As discussed below, however, Ms. Alcantara subsequently forwarded Ms. Ramirez's doctor's note to Defendants' Counsel on May 6, 2024.  *See infra* Section I.G.1.

**D.     The Deputy Clerk's Second Phone Conversation With Ms. Alcantara**

Ms. Alcantara called the Clerk of Court's office a second time on either April 30, 2024 or

May 1, 2024.[19]  This time, Ms. Alcantara gave the Deputy Clerk a chance to explain all three of

her options if she wanted to file documents as a *pro se* litigant.  To reiterate, those options are:

(1)     applying for privileges to e-file documents *via* CM/ECF;

(2)     submitting filings traditionally either *via* mail or in person; or

(3)     submitting filings electronically *via* the "Pro Se Drop Box."[20]

Ms. Alcantara again accused the Clerk's office of treating her unfairly for requiring her to follow

one of those three procedures instead of letting her simply email documents to the Clerk's office

for docketing.  She also threatened to sue the Clerk's office for refusing to accept email filings.

**E.     Ms. Alcantara's May 2, 2024 Email**

On May 2, 2024, Ms. Alcantara sent yet another email to the Operations Clerk whom she

had emailed twice before:

                              *     *     *

Good Morning,

I have sent 3 prior emails[21] regarding e-filing with the court. I have not had a
response and would like to know the process so that I can directly e-file for this
case.

Thank you,
Olga Alcantara
                              *     *     *

Ms. Alcantara didn't copy Defendants' Counsel on the May 2, 2024 email either.

---

[19] The Deputy Clerk doesn't remember the exact date.

[20] *See supra* Section I.B.

[21] As far as the Court's investigation reveals, Ms. Alcantara sent the Clerk's office only two
emails before the May 2, 2024 email reprinted here—not three.

The Operations Clerk forwarded Ms. Alcantara's May 2, 2024 email to the Deputy Clerk

with the following message for Ms. Alcantara:

*      *      *

Good morning,

I have forward[ed] your email to my supervisor as I am not in charge of this case.

*      *      *

## F.    The Deputy Clerk's May 3, 2024 Email to Ms. Alcantara

The next day, the Deputy Clerk sent Ms. Alcantara the following response to her May 2,

2024 email:[22]

*      *      *

Hello Ms. Alcantara,

Thank you for reaching out to our office for assistance.  First, for you to e-file documents to cases in our district you must motion the court to e-file and the Court must grant your motion.  Once you are granted privileges to e-file, you are then required to contact PACER for a login and password.  If you wish to file documents (if you do not have e-filing privileges) you must file your pleadings traditionally. We also offer our Pro Se Drop Box for Pro Se filers to submit filings in this manner. I understand you are not in El Paso; therefore, you must either mail in your pleadings to our office or use the Pro Se Drop Box (for Pro Se Filers).  **Keep in mind, filings cannot be submitted through email.**  I have enclosed both links below for your reference.

---

[22] The Deputy Clerk didn't copy Defendants' counsel on his May 3, 2024 email.  He wasn't required to do so, however, because his response addressed nonsubstantive administrative matters only. *See* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4)(b) (identifying circumstances in which the Court may "permit ex parte communication for . . . administrative . . . purposes"); *see also infra* Section II.A (discussing that exception to the prohibition against ex parte communications in greater depth).

As the Court explains below, however, *Ms. Alcantara*'s emails *to* the Clerk's office weren't limited to purely administrative matters, and they therefore crossed the line into impermissible ex parte communications.  *See infra* Sections II.A.2–3.

Here is our address:

Clerk, U.S. District Court
525 Magoffin Ave., Suite 105
El Paso, Texas 79901

www.txwd.uscourts.gov/filing-without-an-attorney/pro-se-manual/

www.txwd.uscourts.gov/filing-without-an-attorney/electronic-filing-for-pro-se/

If you have any questions, please feel free to reach out to me for assistance.

\*     \*     \*

According to the Deputy Clerk, the information he provided in that email was, in sum and substance, identical to the information that he had already provided Ms. Alcantara during their second phone call on either April 30th or May 1st.[23]

## G.     Ms. Alcantara's Non-Ex Parte Emails

As far as the Court's investigation reveals, Ms. Alcantara didn't make any other ex parte contacts with the Clerk's office after the Deputy Clerk emailed her on May 3, 2024.  She did, however, send the Clerk's office two *non*-ex parte emails on which she copied Defendants' Counsel.  Although the Court doesn't need to reproduce those non-ex parte communications here because Defendants already have access to them,[24] the Court will nonetheless do so to provide context for the Court's discussion below, as well as to provide a full public record of Ms. Alcantara's communications with the Court.

---

[23] *See supra* Section I.D.

[24] *See* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4) (requiring a federal judge to "promptly notify the parties of the subject matter of" any "*unauthorized ex parte* communication bearing on the substance of a matter" (emphasis added)).

### 1.      Ms. Alcantara's May 6, 2024 Email

On May 6, 2024, Defendants (but not Plaintiffs) complied with the Court's earlier Order to provide their availabilities for trial.[25]  In that filing, they informed the Court that Ms. Alcantara had sent Defendants' Counsel several messages indicating that she had sent multiple ex parte communications to the Clerk's office in violation of the judicial ethics rules.[26]  In those messages to Counsel, Ms. Alcantara referenced the doctor's letter she had previously transmitted

---

[25] *See* Defs.' Proposed Trial Dates.

*See also supra* note 12 and accompanying text.

[26] *See* Defs.' Proposed Trial Dates at 14 (May 3, 2024 email from Ms. Alcantara to Defendants' Counsel stating: "I am still waiting on the El Paso Court Clerks . . . to allow me to e-file for further information on the available dates.  I have submitted these requests 4-5 times in the past 4-5 days with no follow up information, which is very discriminatory at this point."); *id.* at 2 (emphasizing "that Defendants['] counsel were *not* copied on any of the[] communications" with the Clerk's office that Ms. Alcantara referenced in her May 3, 2024 email to Defendants' Counsel).

*See also id.* at 21 (May 3, 2024 email from Ms. Alcantara to Defendants' Counsel stating (among other things) that she had "submitted info to the court about future court proceedings"); *id.* at 3 (again emphasizing that "Defendants' counsel were not copied on any of these communications," and arguing that if those messages "were actually forwarded to the court as indicated, [they] would be improper *ex parte* communications.").

*See also id.* at 22 (May 6, 2024 email from Ms. Alcantara to Defendants' Counsel stating: "I have still not received any information regarding my option to efile with El Paso Court [sic]."); *id.* (complaining that "Defendants' counsel were not copied with any of Olga Alcantara's communications with the Clerk or the Court").

The Court hastens to add that Ms. Alcantara's assertion—*i.e.*, that, as of May 6, 2024, the Clerk's office hadn't provided her information regarding how to file documents electronically—is false.  By May 3, 2024, the Deputy Clerk had given Ms. Alcantara that information at least twice.  *See supra* Sections I.D & F.

to the Clerk's office on April 29, 2024—which, at least at that time, Defendants' Counsel hadn't yet seen.[27]

Shortly after receiving Defendants' filing, Ms. Alcantara sent the following email to Defendants' Counsel, the Deputy Clerk, and the Operations Clerk:

\*        \*        \*

Hello,

I sent this to [the Operating Clerk] on April 29, 2024. The medical letter is attached.

Thank you,
Olga A

\*        \*        \*

The doctor's letter that Ms. Alcantara attached to that email was the same letter she had previously sent to the Operating Clerk on April 29, 2024.[28]

### 2.    Ms. Alcantara's May 7, 2024 Email

Then, on May 7, 2024, Ms. Alcantara sent the following email to the Deputy Clerk and Operations Clerk, with Defendants' Counsel copied:

---

[27] *See* Defs.' Proposed Trial Dates at 22 (May 6, 2024 email from Ms. Alcantara to Defendants' Counsel stating: "Currently Evelyn is unable to attend any court hearings via video conference much less in person for a minimum of 11 months (according to a medical doctor's letter regarding this).  This is all the information that I am able to provide at the moment."); *id.* at 4 ("Ms. Alcantara indicated that Evelyn Ramirez would apparently be unable to participate in any hearings for a minimum of 11 months according to some unidentified and undisclosed 'doctor's letter.'").

*See also supra* Section I.C.

[28] *See supra* Section I.C.

\*       \*       \*

Good Morning,

I did receive a copy of the Defendants' Joint Proposed TRIAL and Pre-TRIAL Dates and would like to add that I did communicate with [the Court's Operations Clerk] as soon as April 29, 2024 that Evelyn would not be available to [attend] any court hearings by providing a Medical Letter from [Ms. Ramirez's doctor] via email (which I forwarded to all parties on May 5 [sic], 2024). I also did ask [the Operations Clerk] and [the Deputy Clerk] about my request to e-file and [the Deputy Clerk] stated I had to go to El Paso, TX in person to request this.[29] Not once did either mention that all parties had to be cc'd (neither did [Defendants' Counsel]).  have [sic] not resided in El Paso for several years and also my daughter is in an incapacitated state where she needs me at this time. Due to the fact that my prior attorney was definitely not in our best interest and was withdrawn from this case, I am unable to communicate with the court regarding the vital factors that may delay upcoming hearings. It's common sense that you can look at this situation and understand that Evelyn is currently fully incapacitated due [sic] (after a car accident that occurred in El Paso, TX while visiting her grandmother.) I am able to attend ANY of the Defendants' available dates as long I can represent Evelyn (since medically she cannot attend). Also, it states on #5 of this filing, "Sensing that she (me) misinterpreted Judge Gualderrama's [sic] April 22, 2024 motion" reflects Defendants' assumptions and lack of judgment in this filing. Overall it portrays that all parties are bullying, discriminating and abusing power. Also, due to the fact that Evelyn is in such a dire state she did mention she is afraid of what [E]l Paso Police Dept can do because her father (Carlos Ramirez Jr DOB [REDACTED]) keeps communicating with them. I am NOT afraid of the EPPD at all and have let the FBI know months ago about this situation and how my daughter was in El Paso with a friend's ID due to fear of being in El Paso, TX and was all of sudden hit in a near death car accident. After she was in the accident, she was not found at the hospital because she in fact had her friends' ID on her. My prior attorney, Soloman [sic] Radner, and I did not see eye to eye because what he was doing was illegal. He stated multiple times to not "threaten him" when in fact he was the one calling me on Black Friday 2023 from a phone number (Caller ID stated Hazalah [sic] of Michigan - Ambulance Company). Phone number belonged to Corbett O'Meara (RIP) A Michigan judge's son.

---

[29] Parenthetically, the Court emphasizes that Ms. Alcantara's assertion that the Deputy Clerk told her that she "had to go to El Paso, TX in person to request" permission to e-file is also false.  As noted, the Deputy Clerk unambiguously informed Ms. Alcantara in his May 3, 2024 email that she had multiple options for filing documents that don't require physically traveling to El Paso.  *See supra* Section I.C.

Once again, I am available on any date the Defendants' [sic] have included as long as I speak for my daughter (since she cannot and will not for several months). I have cc'd all parties, and if any is still missing please let me know.

Thank you,
Olga Alcantara

* * *

Based on the information about Ms. Ramirez's health status that Ms. Alcantara gave the Court and the parties in those non-ex parte emails, the Court issued an Order temporarily staying the case.[30]  The Court reasoned that "Ms. Ramirez will likely be a critical witness at trial," and that it would therefore "be imprudent to require Plaintiffs to proceed to trial before Ms. Ramirez's condition improves."[31]  In that Order, the Court required the parties to "confer and jointly file a status update" by June 10, 2024 "informing the Court whether Ms. Ramirez's condition has improved enough to permit this case to proceed to trial."[32]

The Court also admonished Plaintiffs in that Order that "if they seek relief from the Court in the future, they must do so by filing a formal motion that complies with the Court's rules—not by emailing the Clerk of Court's office."[33]  The Court emphasized that "[t]he Clerk of Court's personnel have already informed Ms. Alcantara about the procedures for submitting *pro se* filings."[34]

---

[30] *See* Order Staying Case, ECF No. 181, at 1–2.

[31] *Id.* at 2.

[32] *Id.* (emphasis omitted).

[33] *Id.* at 3.

[34] *Id.*; *see also supra* Sections I.D & F.

## II.    DISCUSSION

Because Ms. Alcantara didn't include Defendants' Counsel on the ex parte communications reprinted above, the Court must determine whether those communications violated the Judiciary's ethical rules—and, if so, how to remedy those violations.

### A.    At Least Some Parts of Ms. Alcantara's Communications with the Clerk's Office Were Improper Ex Parte Communications

Whenever a litigant communicates ex parte with the Court or its employees, it creates the risk that the party making those communications will gain an unfair advantage in the litigation.[35] For that reason, the Code of Conduct for United States Judges generally prohibits federal judges from "permit[ting] or consider[ing] ex parte communications."[36]  The Code also requires judges to "make reasonable efforts to ensure that . . . court personnel"—such as employees in the Clerk of Court's office—"comply with" the prohibition against ex parte communications.[37]

There are, however, a few exceptions to that general rule.[38]  As relevant here, a federal judge may, "when circumstances require it, permit ex parte communication[s] for scheduling, administrative, or emergency purposes."[39]  Critically, however, such communications qualify for that exception only if they don't "address substantive matters," and only if "the judge reasonably

---

[35] *See, e.g.*, *Kaufman*, 601 F.3d at 1095 ("Generally, the danger posed by an ex parte communication between a litigant and the court is that the court's impartiality may be compromised by the communication itself and the other litigant's inability to refute or clarify the substance of the communication.").

[36] CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4).

[37] *Id.* § 3A(4) cmt.

[38] *See, e.g., id.* § 3A(4)(a) (providing that a federal judge may "initiate, permit, or consider ex parte communications" if otherwise "authorized by law"); *id.* § 3A(4)(c) (specifying limited circumstances in which a federal judge may permissibly "obtain the written advice of a disinterested expert on the law"); *id.* § 3A(4)(d) (authorizing federal judges to "confer separately with the parties and their counsel in an effort to mediate or settle pending matters," but only if the parties consent).

[39] *See id.* § 3A(4)(b).

believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication."[40]

As the Court now explains, some parts of Ms. Alcantara's communications with the Clerk's office qualify for that exception, but the other parts don't.

### 1.    Ms. Alcantara's Ex Parte Communications Were Permissible to the Limited Extent She Sought Technical Guidance Regarding e-Filing

Solely to the limited extent that Ms. Alcantara contacted the Clerk's office for technical guidance regarding the procedures for filing documents as a *pro se* litigant, her communications were for permissible "administrative . . . purposes."[41]  The Court perceives no way in which the Deputy Clerk's written and telephonic communications educating Ms. Alcantara about the various available methods for submitting *pro se* filings gave her "a procedural, substantive, or tactical advantage" that she wouldn't have obtained if Defendants were included on those communications,[42] as that information is available to everyone on the Court's website.[43]  Thus, if Ms. Alcantara's sole reason for contacting the Clerk's office had been to ask how to e-file, her ex parte communications would have been unobjectionable.

---

[40] *See id.*

[41] *See id.*

*See also supra* Section I.A ("I currently do not have an attorney for this case (pro se) and would like to e-file. Could you please provide me with the necessary information to begin this process?"); Section I.E ("I . . . would like to know the process so that I can directly e-file for this case."); Sections I.B, D, & F (the Deputy Clerk's explanations of the three methods by which *pro se* litigants may file documents in this Court).

[42] *See* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4)(b).

[43] *See supra* notes 16–17.

**2.** **Ms. Alcantara's Ex Parte Communications Were Impermissible to the Extent They Presented Extrinsic Evidence of Her Co-Plaintiff's Health Status to the Court**

The problem, however, is that Ms. Alcantara went further. As mentioned, she also forwarded the Clerk's office a doctor's note containing information about Ms. Ramirez's medical status that wasn't part of the official judicial record, and which (at least at that time) Ms. Alcantara hadn't provided to Defendants.[44] Ms. Alcantara's purpose for sending the Court that extrinsic evidence appears to have been to persuade the Court to reject Defendants' proposal to schedule this case for a trial in late 2024,[45] and to instead postpone the trial for 11 months or more.[46]

In that respect, Ms. Alcantara's communications crossed the line. To be sure, a federal court may "permit ex parte communication for scheduling . . . or emergency purposes,"[47] and Ms. Alcantara's communications about Ms. Ramirez's health status relate to *scheduling* the trial for a different date due to Ms. Ramirez's medical *emergency*. Again, though, the Court may permit communications for scheduling or emergency purposes *only* when the Court "reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the

---

[44] *See supra* Section I.C.

[45] *See* Defs.' Proposed Trial Dates at 4 (proposing trial dates in October or November of this year).

[46] *See id.* at 22 (email from Ms. Alcantara to Defendants stating that Ms. Ramirez is currently "unable to attend any court hearings via video conference much less in person for a minimum of 11 months (according to a medical doctor's letter regarding this)").

[47] *See* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4)(b).

*See also supra* note 39 and accompanying text.

ex parte communication."[48]  If the Court had delayed the trial based on a document that Ms.

Alcantara had provided the Court in an unauthorized ex parte communication, and which

Defendants had never seen, that would have given Plaintiffs an unfair procedural advantage over

Defendants.[49]  Thus, to the extent Ms. Alcantara's ex parte communications contained extrinsic

evidence about Ms. Ramirez's health status, and to the extent Ms. Alcantara sought to influence

the Court's decisions based on that evidence, her ex parte communications violated the Code of

Conduct.

### 3.    Ms. Alcantara's Communications Were Impermissible to the Extent She Sought to Intimidate the Clerk's Office Into Letting Her File Documents *via* Email

Finally, to the extent Ms. Alcantara made ex parte communications threatening to sue the

Court's employees unless they let her file documents *via* email,[50] her ex parte communications

*absolutely* sought a "procedural . . . or tactical advantage" that she wouldn't otherwise have,[51] as

*no* litigant in this Court (*pro se* or otherwise) has the right to file documents by simply emailing

---

[48] *See* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4)(b).

*See also supra* note 40 and accompanying text.

[49] As noted, the Court did ultimately stay this case to give Ms. Ramirez time to recover.  *See supra* Section I.G.2.  By the time the Court issued that Order, however, Plaintiffs had given Defendants' Counsel a copy of the doctor's letter.  *See supra* Section I.G.1.  The Court therefore didn't base its ruling on information it obtained exclusively *via* an ex parte communication.  The Court thus would have granted the stay based on Ms. Ramirez's health status irrespective of whether Ms. Alcantara had previously communicated ex parte with the Clerk's office.

The fact remains, though, that Ms. Alcantara's ex parte communications raise serious ethical concerns that the Court must address.

[50] *See supra* Section I.D.

[51] *See* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4)(b).

them to employees in the Clerk's office.[52]  Those ex parte communications therefore violated the

Code of Conduct.  The Court will **NOT** tolerate any future attempts by Ms. Alcantara—ex parte

or otherwise—to bully the Court or its employees into creating special exceptions to the Court's

procedures that apply to her and her alone.

It's unclear why Ms. Alcantara is so insistent that the Court let her file documents *via*

email.  The Deputy Clerk's May 3, 2023 email to Ms. Alcantara unequivocally informed her that

she has multiple options to file documents without physically traveling to El Paso,[53] including by

submitting documents *via* the Electronic Pro Se Drop Box.[54]  Ms. Alcantara's refusal to use the

electronic drop box is particularly perplexing because, at least from the filer's perspective, filing

documents *via* Box.com is no more burdensome than sending an email.[55]  A *pro se* litigant

doesn't even need a special account to file documents that way; nor does a *pro se* litigant need

CM/ECF privileges to submit documents to the Drop Box.  The Drop Box merely enables the

Clerk's office to process and track *pro se* filings—which is why the Clerk's office insists that *pro*

---

[52] *See, e.g.*, W.D. TEX. L.R. CV-5(a) ("Documents filed by electronic means must comply with the Administrative Policies and Procedures for Electronic Filing in Civil and Criminal Cases, available on the court website."); ADMINISTRATIVE POLICIES AND PROCEDURES FOR ELECTRONIC FILING IN CIVIL AND CRIMINAL CASES § 2(b) (W.D. Tex. June 24, 2021) ("Sending a document or pleading to the Court via electronic mail (e-mail) as an attachment does not constitute 'electronic filing.'"); *see also supra* Section I.F.

Ms. Alcantara's assertion that the Court is "discriminating" against her by not letting her file documents *via* email is therefore false.  *Contra supra* Section I.G.2.  Ms. Alcantara is in fact asking the Court to discriminate against *other litigants* in her *favor* by giving her special email-filing privileges that no one else enjoys.

[53] As noted, the plain text of that email contradicts Ms. Alcantara's assertion that the Deputy Clerk told her she had to physically travel to El Paso to file documents in this case.  *See supra* note 26.

[54] *See supra* Sections I.D & F.

[55] *See* Electronic Submission for Pro Se Filers, https://www.txwd.uscourts.gov/filing-without-an-attorney/electronic-filing-for-pro-se/.

*se* litigants without CM/ECF privileges use the Drop Box (instead of email) when filing documents electronically.

Simply put, nothing about Plaintiffs' circumstances—even after taking Ms. Ramirez's current medical condition into account—makes it unfair to require Plaintiffs to follow the same rules and procedures that apply to every other *pro se* litigant in this Court.

## B.    The Court Has Already Told Ms. Alcantara Multiple Times Not to Communicate Ex Parte with the Court

Concerningly, this isn't the first time Ms. Alcantara has made impermissible ex parte communications with the Court; nor is it the first time the Court has told her that the judicial ethics rules forbid such communications.  In fact, as the Court now explains, the Court has already told Ms. Alcantara *three times* that she can't communicate with the Court ex parte.

### 1.    Ms. Alcantara's August 9, 2023 Ex Parte Email

Back on August 7, 2023, the Court set this case for an in-person status hearing on August 23, 2023.[56]  That same day, Defendant Jose Rivas's attorney informed the Court and the parties that he was unavailable that date.[57]  In response, the Court issued an Order telling the parties that the Court would consider a motion to reschedule the status hearing to a different date, but only if the movant first conferred with the other parties to determine everyone's availabilities.[58]

Instead of conferring with the other parties, however, Ms. Alcantara sent the following email to the Clerk's office—and *only* the Clerk's office—on August 9, 2023:

---

[56] Order Setting Status Hr'g, ECF No. 153.

[57] Advisory, ECF No. 156.

[58] *See* Order Regarding Notice Unavailability, ECF No. 157, at 1–2.

Ms. Alcantara received that Order.  *See id.* at 3.

\*      \*      \*

Good Afternoon,

We are available to attend court starting September 12, 2023.

Thank you,
Olga Alcantara

\*      \*      \*

Because Ms. Alcantara hadn't copied the other parties on that email, the Clerk's office forwarded it to my Career Law Clerk, who then sent Ms. Alcantara the following response (with all parties copied) on August 9, 2023:

\*      \*      \*

The Court's ethical rules forbid the Court from communicating with litigants about pending cases without including the other parties. I've therefore cc:ed your former attorneys and Defendants' attorneys on this email.

As the Court stated in its prior orders, if any of the parties want to move the status hearing to a date other than August 23, 2023, they must first confer with the other participants regarding their mutual availabilities and then file a formal motion "that proposes several dates and times that work for all participants." The Court will not consider informal requests to move the hearing via email.

\*      \*      \*

## 2.    The Court Informs Ms. Alcantara for the Second Time That Ex Parte Communications are Impermissible

The parties' attorneys then attempted to confer with Plaintiffs to determine their mutual availabilities for rescheduling the in-person status hearing.[59] The discussions collapsed, however, when Plaintiffs were only willing to give Counsel their availabilities for a *videoconference*[60]—even though the Court had unambiguously informed the parties that the

---

[59] *See* Joint Mot. Reschedule Status Conference, ECF No. 162, at 1–2.

[60] *See id.* at 3 ("We are able to do *a video conference* on those dates." (emphasis added)).

hearing would be *in person*.[61]  When Plaintiffs' former attorney attempted to correct Ms. Alcantara's misconception that the Court would hold the hearing *via* videoconference,[62] Ms. Alcantara insisted that she would "discuss [the matter] with the judge."[63]

Because Plaintiffs had refused to provide the other parties their availabilities for an in-person hearing (as opposed to a video conference), the Court issued an Order on August 18, 2023 rescheduling the August 23rd setting for a date that the Court thought would work for everyone (specifically, September 13, 2023).[64]

In that Order, the Court explicitly disabused Ms. Alcantara of her notion that she could directly "discuss . . . with the judge" whether the hearing would be in person or *via* videoconference.[65]  Specifically, the Court admonished Ms. Alcantara for the second time that the Court would not and could not "informally converse with her about the hearing date and procedure outside the other parties' presence in contravention of the Judiciary's ethical rules."[66]

---

[61] *See* Order Setting Status Hr'g at 2 ("Plaintiffs, Plaintiffs' Counsel, and Defendants' Counsel all must attend in person." (emphasis omitted)); Order Denying 2d Mot. Withdraw, ECF No. 159, at 7 ("To ensure that Plaintiffs understand the consequences of their decision to proceed without counsel—including that their former attorney may attempt to assert a lien against them—the Court must meet in person with Plaintiffs, as well as the attorneys on both sides.").

[62] *See id.* at 3 ("This is not for a video conference.  This is for an in-person status conference in El Paso, just like we have been discussing via email for several weeks." (emphases omitted)).

[63] *See id.* at 4 ("I will discuss this with the judge Aug[ust] 21, 2023 when he is back.").

[64] *See* Order Rescheduling Status Conference, ECF No. 163, at 3–4 ("[E]ven though Plaintiffs didn't join [the other parties' motion to reschedule the status conference] and didn't explicitly specify whether they're available to attend an in-person hearing on September 13, 2023 instead of a videoconference, the information they did provide suggests that they too could physically come to the courthouse that date. . . . The Court [therefore reschedules] the status hearing to September 13, 2023 . . . ." (emphasis omitted)).

[65] *See supra* note 63 and accompanying text.

[66] Order Rescheduling Status Conference at 3.

The Court sent Ms. Alcantara a copy of that Order too.  *See id.* at 5.

### 3.    Ms. Alcantara's August 21, 2023 Ex Parte Letter

In abject disregard of the Court's August 18, 2023 Order informing her that she couldn't directly communicate with the judge presiding over her case, Ms. Alcantara drafted a letter addressed directly to me.[67]  She then emailed that letter to the Clerk's office—without copying the other parties—on August 21, 2023.[68]  In that letter, Ms. Alcantara asked me to reconsider my decision to hold the now-rescheduled status conference in person rather than *via* teleconference.[69]  She also "apologize[d]" in that letter for her "misconception[]" that she "could converse with the court outside the other parties' presence"[70]—and then immediately contradicted that apology by sending the letter directly to the Court without copying the parties.[71]

The Clerk's office employee who received that letter sent Ms. Alcantara the following response on August 22, 2023, with the Deputy Clerk and my Career Law Clerk copied:

---

[67] *See* Letter, ECF No. 164, at 1 ("Dear Judge Guaderrama, . . . .").

[68] *See* Order Denying Mot. Conduct In-Person Status Conference *via* Teleconference, ECF No. 165, at 1 (noting that, "[a]s far as the Court [could] tell, Ms. Alcantara didn't cc: Defendants' Counsel" on her August 21, 2023 email).

[69] Letter at 2.

[70] *Id.* at 1.

[71] *See* Order Denying Mot. Conduct In-Person Status Conference *via* Teleconference at 1.

*       *       *

Good morning Ms[.] Alcantara,

Please contact your attorney for the filing of your letter.[72]

Email is not an acceptable format to file correspondence to the court.

*       *       *

My Career Law Clerk then sent Ms. Alcantara the following email on August 22, 2023, copying counsel for all parties:

*       *       *

Dear Ms. Alcantara,

As I informed you in my previous email, the federal Judiciary's ethical rules forbid the Court from considering informal communications from litigants outside the presence of their opponents. The Court thus cannot consider your letter. I have also cc:ed counsel of record in this case to make them aware of the letter.

If you would like the Court to reconsider its order setting an in-person status conference for September 13, 2023 instead of a videoconference, you must file a formal motion that complies with the Western District of Texas's Local Rules and all other applicable laws.

*       *       *

---

[72] The Court hadn't yet permitted Plaintiffs' attorney to withdraw as their counsel of record at the time Ms. Alcantara sent the Court her August 21, 2023 letter. *See* Order Allowing Pls.' Counsel Withdraw, ECF No. 178, at 1, 16 (letting Plaintiffs' attorney withdraw as counsel on April 22, 2024). Thus, at least at that time, Plaintiff had no right to file her letter *pro se*. *See, e.g.*, *Amos v. Cain*, No. 4:20-CV-7, 2022 WL 610344, at *9 n.9 (N.D. Miss. Mar. 1, 2022) ("[F]il[ing] motions in a *pro se* capacity while represented by counsel . . . is not permitted . . . .").

That same day, the Court issued an Order admonishing Ms. Alcantara "for the third time that, with exceptions not applicable here, the Court's ethical rules forbid the Court from considering '*ex parte* communications'—that is, informal communications from litigants made outside their opponents' presence."[73]

It's therefore deeply concerning that Ms. Alcantara continues to communicate ex parte with the Court's staff after the Court has already told her three times that such communications violate the Judiciary's ethical rules.[74]  It's likewise alarming that Ms. Alcantara remains under the misimpression that she may directly "communicate with the court / judge"[75] about her case even after the Court has already rebuked her for trying to do exactly that.[76]  The Court thus cautions Ms. Alcantara for the final time that if she violates the rule against ex parte communications again, the Court will consider sanctioning her accordingly.

## C.    The Court Has Disclosed Ms. Alcantara's Ex Parte Communications to Defendants Above, and Will Give Defendants an Opportunity to Respond

The Code of Conduct states that where—as here—"a judge receives an unauthorized ex parte communication," he or she must "promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested."[77]  The Court has now notified Defendants of the subject matter of Ms. Alcantara's ex parte communications with the judicial personnel by recounting those communications above.  If Defendants wish to

---

[73] *See also* Order Denying Mot. Conduct In-Person Status Conference *via* Teleconference at 1. The Court sent Ms. Alcantara a copy of that Order too.  *See id.* at 3.

[74] *See supra* Sections I.A–E.

[75] *See supra* Section I.C.

[76] *See supra* Section II.B.

[77] CODE OF CONDUCT FOR UNITED STATES JUDGES Canon 3A(4).

respond to any of those communications, they may file a response on the case docket at their leisure.

### III.    CONCLUSION

In sum, the Court **ADMONISHES** Plaintiffs for the fourth and final time that they may not communicate with the Court or its employees without copying Defendants' Counsel.

The Court likewise **WARNS** Plaintiffs for the last time that if they communicate ex parte with the Court in violation of the applicable ethical rules going forward, the Court will consider imposing sanctions against the party who made the unauthorized communication. Such sanctions may include—but aren't necessarily limited to—dismissing that Plaintiff's claims for failure to follow court orders under Federal Rule of Civil Procedure 41(b).[78]

The Court also **REPEATS** the admonition it gave Plaintiffs when it issued its May 8, 2024 Order staying this case:[79] If, at any point going forward in this case, Plaintiffs want the Court to grant them some form of relief, they must seek that relief by filing a *formal motion* that complies with the Court's rules and procedures—**NOT** by emailing the Clerk of Court's office.[80] As discussed above, the Deputy Clerk has educated Ms. Alcantara multiple times about her various options for filing documents as a *pro se* litigant. If either Plaintiff attempts to circumvent those procedures going forward, the Court will consider imposing sanctions against that Plaintiff. Such sanctions likewise may include—but aren't necessarily limited to— dismissing the noncompliant Plaintiff's claims.[81]

---

[78] *See supra* note 8 and accompanying text.

[79] *See supra* Section I.G.2.

[80] *See, e.g.*, FED. R. CIV. P. 7(b)(1) ("A request for a court order must be made by motion.").

[81] *See supra* note 11 and accompanying text.

Finally, the Court **CAUTIONS** Plaintiffs that the Court will not tolerate future attempts to intimidate the Clerk's office into creating special exceptions to the Court's rules that apply to Plaintiffs and Plaintiffs alone.[82]

The actions listed above are not the only types of improper behavior that could result in sanctions. The Court will **NOT** abide future violations of **ANY** of its rules, orders, or procedures.

The Clerk of Court shall **EMAIL** a copy of this Order to:

Olga Alcantara
olgazel1133@gmail.com

Evelyn Ramirez
ramirez_evelyn48@yahoo.com

The Court **EMPHASIZES** that it is emailing this Order to Plaintiffs solely because they previously consented to receive orders via email.[83] By emailing this Order to Plaintiffs, the Court **IN NO WAY IMPLIES** that Plaintiffs enjoy a reciprocal right to email filings or substantive correspondence to the Court or its employees.

**So ORDERED and SIGNED this 20th day of May 2024.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[82] *See supra* Section II.A.3.

[83] *See, e.g.*, Letter at 2.

*See also* FED. R. CIV. P. 5(b)(2)(E) (authorizing service "by [an] electronic means that the person consented to in writing").