UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **CARLOS RAMIREZ** *as Guardian of the Person and Estate of Evelyn Ramirez*, **and OLGA ALCANTARA**, *on her own behalf*, | § § § § § | |
| *Plaintiffs*, | § | **EP-18-CV-00298-DCG** |
| **v.** | § § | |
| **MARCO JASSO**, *#1888*; **JOSE RIVAS**, *#2985*; **RICARDO VILLAGRAN**, *#2882*; **and JANE DOE**, | § § § § | |
| *Defendants*. | § | |

## <u>ORDER DISMISSING PLAINTIFF OLGA ALCANTARA'S CLAIMS</u>

Despite being told multiple times that ex parte communications violate the Judiciary's ethical rules, and despite receiving a "final warning" that the Court would consider "dismissing [her] claims" if she made any further ex parte communications "with the Court or its employees . . . going forward," *pro se* Plaintiff Olga Alcantara made yet another impermissible *ex parte* communication with the Court on February 3, 2025. *See* Notice Re Pl.'s Ex Parte Communications, ECF No. 182, at 2–3. Thus, just as the Court warned it would do, the Court now **DISMISSES** Ms. Alcantara's claims **WITH PREJUDICE** pursuant to Federal Rule of Civil Procedure 41(b). Nothing in this Order affects Plaintiff Carlos Ramirez, *as Guardian of the Person and Estate of Evelyn Ramirez*, and this case will proceed with respect to his claims.

## <u>BACKGROUND</u>

This litigation arises from an incident that occurred between Ms. Alcantara, Evelyn Ramirez, and El Paso police officers. *See, e.g.*, Am. Compl., ECF No. 27, at 3–6. The facts of this incident are recounted in detail elsewhere and need no review. *See E.R. v. Jasso*, 573 F. Supp. 3d

1117, 1121–1127 (W.D. Tex. Nov. 30, 2021) *aff'd*, No. 22-50017, 2022 WL 4103621 (5th Cir. 2022); *see also E.R. v. Jasso*, No. 3:18-CV-298, 2019 WL 3388040, at *1–2 (W.D. Tex. July 26, 2019).

Ms. Alcantara brings this civil rights action under 42 U.S.C. § 1983. Am. Compl., ECF No. 27, at 1, 7–14. Originally, Ms. Alcantara was proceeding on her own behalf and on behalf of her daughter, Evelyn Ramirez.[1] *See id.* at 1. However, Evelyn Ramirez's father Carlos Ramirez informed the Court that a Probate Court declared Evelyn "to be totally without capacity to care for herself or to manage her property" and therefore appointed him as her permanent guardian. Mot. Substitution, ECF No. 192, at 1–2. Carlos Ramirez thus moved to substitute himself in Evelyn's place as a Plaintiff in this matter. *Id.* at 1–2. After Mr. Ramirez corrected the deficiencies in his Original Motion to Substitute, which is discussed below, the Court granted Mr. Ramirez's request. *See* Renewed Mot. Substitution, ECF No. 194, at 1–2; *see also* Order Granting Carlos Ramirez's Mot. Substitute, ECF No. 195, at 2. In that Order, the Court explained that Ms. Alcantara will proceed on her own behalf and Carlos Ramirez will proceed as Guardian of the Person and Estate of Evelyn Ramirez. Order Granting Carlos Ramirez's Mot. Substitute, ECF No. 195, at 2.

As indicated, this Order only concerns Ms. Alcantara. Throughout the course of this litigation, this Court explained to Ms. Alcantara that with very limited exceptions, the Code of Conduct for United States Judges forbids litigants from making "ex parte communications"—that is, from communicating with the Court (or its employees) without including the other parties.[2]

---

[1] At the time this litigation commenced, Evelyn Ramirez was a minor. However, the parties informed the Court that Evelyn Ramirez is no longer a minor. *See, e.g.*, Resp. Mot. Summ. J., ECF No. 94, at 2 n.1. Accordingly, the Court refers to her by her full name rather than by her initials.

[2] *See* Communication, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining an "ex parte communication" as a "communication between counsel or a party and the court when opposing counsel or party is not present," and noting that "[s]uch communications are ordinarily prohibited").

The Court thus issued several orders admonishing Ms. Alcantara for communicating with the Court ex parte. *See* Order Denying Mot. Conduct In-Person Status Conference via Teleconference, ECF No. 165, at 1; *see also* Order Rescheduling Status Conference, ECF No. 163, at 3; *see also* Notice Re Pl.'s Ex Parte Communications, ECF No. 182, at 1–2.

In the most recent Order, the Court detailed Ms. Alcantara's prior impermissible ex parte communications and explicitly stated that it was to serve as her final warning, and that repeated behavior of such may result in sanctions, including dismissing her claims. Notice Regarding Pl.'s Ex Parte Communications, ECF No. 182, at 16–19. Despite that explicit final warning to Ms. Alcantara, she continues to communicate with the Court ex parte.

For context, the Court reiterates and summarizes Ms. Alcantara's previous impermissible ex parte communications, along with the Court's previous warnings to her regarding such. Following the summary, the Court discloses Ms. Alcantara's most recent ex parte communication The Court then considers whether Ms. Alcantara's most recent ex parte communication violated the Code of Conduct for United States Judges and the Court's previous Order. Finally, the Court analyzes whether dismissal is appropriate under Federal Rule of Civil Procedure 41(b). The Court concludes that it is.

<u>**Ms. Alcantara's Previous Ex Parte Communications**</u>

**1.    Ms. Alcantara's August 9, 2023 Ex Parte Email**

Back on August 7, 2023, the Court set this case for an in-person status hearing on August 23, 2023. Order Setting Status Hr'g, ECF No. 153. That same day, Defendant Jose Rivas's attorney informed the Court and the parties that he was unavailable that date. Advisory, ECF No. 156. In response, the Court issued an Order telling the parties that the Court would consider a motion to reschedule the status hearing to a different date, but only if the movant first conferred

with the other parties to determine everyone's availabilities.  *See* Order Regarding Notice Unavailability, ECF No. 157, at 1–2.  Ms. Alcantara received that Order.  *See id.* at 3.

Instead of conferring with the other parties, however, Ms. Alcantara sent the following email to the Clerk's office—and *only* the Clerk's office—on August 9, 2023:

\*        \*        \*

Good Afternoon,

We are available to attend court starting September 12, 2023.

Thank you,
Olga Alcantara

\*        \*        \*

Because Ms. Alcantara hadn't copied the other parties on that email, the Clerk's office forwarded it to my Career Law Clerk, who then sent Ms. Alcantara the following response (with all parties copied) on August 9, 2023:

\*        \*        \*

The Court's ethical rules forbid the Court from communicating with litigants about pending cases without including the other parties.  I've therefore cc:ed your former attorneys and Defendants' attorneys on this email.

As the Court stated in its prior orders, if any of the parties want to move the status hearing to a date other than August 23, 2023, they must first confer with the other participants regarding their mutual availabilities and then file a formal motion "that proposes several dates and times that work for all participants."  The Court will not consider informal requests to move the hearing via email.

\*        \*        \*

4

### 2.    Court's Order Rescheduling Status Conference

The parties then began to confer as to a new date for the status conference.  Joint Mot. Reschedule, ECF No. 162, at 2–4.  When Ms. Alcantara's former attorney[3] attempted to correct her misconception that the Court would hold the hearing *via* videoconference, Ms. Alcantara insisted that she would "discuss this with the judge when he is back."  *Id.* at 4.  Out of an abundance of caution, the Court again warned Ms. Alcantara that the Court would not and could not "informally converse with her about the hearing date and procedure outside the other parties' presence in contravention of the Judiciary's ethical rules."  Order Rescheduling Status Conference, ECF No. 163, at 3.[4]

### 3.    Ms. Alcantara's Ex Parte August 21, 2023 Letter

After the Court issued its Order disabusing Ms. Alcantara of her notion that she could informally communicate with the Court outside the other parties' presence, Ms. Alcantara drafted a letter addressed directly to me.  *See* Letter, ECF No. 164, at 1 ("Dear Judge Guaderrama, . . .").  She then emailed that letter to the Clerk's office—without copying the other parties—on August 21, 2023.  *See* Order Denying Mot. Conduct In-Person Status Conference *via* Teleconference, ECF No. 165, at 1 (noting that, "[a]s far as the Court [could] tell, Ms. Alcantara didn't cc: Defendants' Counsel" on her August 21, 2023 email).  In that letter, Ms. Alcantara asked me to reconsider my

---

[3] The Court hadn't yet permitted Plaintiffs' attorney to withdraw as their counsel of record at the time Ms. Alcantara sent the Court her August 21, 2023 letter.  *See* Order Allowing Pls.' Counsel Withdraw, ECF No. 178, at 1, 16 (letting Plaintiffs' attorney withdraw as counsel on April 22, 2024).  Thus, at least at that time, Plaintiff had no right to file her letter *pro se*. *See, e.g.*, *Amos v. Cain*, No. 4:20-CV-7, 2022 WL 610344, at *9 n.9 (N.D. Miss. Mar. 1, 2022) ("[F]il[ing] motions in a *pro se* capacity while represented by counsel . . . is not permitted . . . .").

[4] To be clear, the Court does not consider this as an ex parte communication, rather its purpose is to demonstrate that the Court provided Ms. Alcantara several warnings regarding prohibited ex parte communications.

decision to hold the now-rescheduled status conference in person rather than *via* teleconference. Letter, ECF No. 164, at 2.  She also "apologize[d]" in that letter for her "misconception[]" that she "could converse with the court outside the other parties' presence"—and then immediately contradicted that apology by sending the letter directly to the Court without copying the parties. *Id.* at 1; *see also* Order Denying Mot. Conduct In-Person Status Conference *via* Teleconference at 1.

The next day, on August 22, 2023, Ms. Alcantara emailed the same letter to both the Clerk's office and my Career Law Clerk—again without copying her attorney (at the time) or the other parties.  The Clerk's office employee who received that letter sent Ms. Alcantara the following response on August 22, 2023, with the Deputy Clerk and my Career Law Clerk copied:

\*       \*       \*

Good morning Ms[.] Alcantara,

Please contact your attorney for the filing of your letter.

Email is not an acceptable format to file correspondence to the court.

\*       \*       \*

My Career Law Clerk then sent Ms. Alcantara the following email on August 22, 2023, copying counsel for all parties:

\*    \*    \*

Dear Ms. Alcantara,

As I informed you in my previous email, the federal Judiciary's ethical rules forbid the Court from considering informal communications from litigants outside the presence of their opponents.  The Court thus cannot consider your letter.  I have also cc:ed counsel of record in this case to make them aware of the letter.

If you would like the Court to reconsider its order setting an in-person status conference for September 13, 2023 instead of a videoconference, you must file a formal motion that complies with the Western District of Texas's Local Rules and all other applicable laws.

\*    \*    \*

That same day, the Court issued an Order admonishing Ms. Alcantara "for the third time that, with exceptions not applicable here, the Court's ethical rules forbid the Court from considering '*ex parte* communications'—that is, informal communications from litigants made outside their opponents' presence."  *See* Order Denying Mot. Conduct In-Person Status Conference *via* Teleconference, ECF No. 165, at 1.

### 4.    Ms. Alcantara's April 25 & 29, 2024 Email and Phone Conversations

On January 28, 2024, Evelyn Ramirez suffered a brain injury.  Order Staying Case, ECF No. 181, at 1–2.  No party informed the Court of the injury, so on April 22, 2024, the Court, unaware of Evelyn's brain injury at the time, issued an order requiring the parties to confer and file proposed trial dates.  Order, ECF No. 179, at 1.

On April 25, 2024, Ms. Alcantara emailed one of the Court's operating clerks seeking directions on how to e-file or otherwise inform the Court regarding her daughter's medical condition.[5]  *See* Notice Regarding Pl.'s Ex Parte Communications, ECF No. 182, at 4.  The next

---

[5] To the limited extent Ms. Alcantara's ex parte communications with the Clerk's office in April and May 2024 merely sought technical guidance regarding how to e-file, they were permissible.  Notice Regarding Pl.'s Ex Parte Communications, ECF No. 182, at 15; *see also* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4)(b) (identifying circumstances in which the Court may "permit ex parte

day, Ms. Alcantara called the Clerk's office.  During that call, the Deputy Clerk attempted to

explain that *pro se* litigants have three options for filing documents.  He first stated that Ms.

Alcantara could apply for privileges to file documents electronically *via* the Court's CM/ECF

system.  He then explained that, even without CM/ECF privileges, *pro se* litigants may still file

documents traditionally by either mailing them to the Clerk's office or filing them in person.

However, before the Deputy Clerk could tell Ms. Alcantara that *pro se* litigants without CM/ECF

privileges also have the third option of submitting filings electronically *via* the Court's "Pro Se

Drop Box" (also known as "Box.com"), Ms. Alcantara accused the Clerk's office of treating her

unfairly by not letting her file documents *via* email.  Ms. Alcantara then terminated the

conversation.

On April 29, 2024, Ms. Alcantara sent the following email to the same Operations Clerk

whom she had emailed on April 25th:

\*       \*       \*

Good Afternoon,

I sent an email last week requesting how I would be able to communicate with the
court / judge since I am currently pro se.  Evelyn is incapacitated at the time and is
unable to attend any court hearings physically or via zoom.  I have a letter from a
medical doctor that states this information.  I will attach this letter as well.

Olga Alcantara

\*       \*       \*

The letter referenced in that email is a note from Evelyn Ramirez's doctor, who attests that she is

"currently recovering from a severe traumatic brain injury" and is therefore not "fit to attend any

---

communications for . . . administrative . . . purposes").  The problem, however, is Ms. Alcantara's
communications went further which is discussed below.

court proceedings" in person or by videoconference.  Ms. Alcantara did not copy Defendants'

Counsel on her April 29, 2024 email.

Ms. Alcantara called the Clerk's office a second time on either April 30, 2024 or May 1,

2024.[6]  During this conversation, the Deputy Clerk explained all three options available to Ms.

Alcantara to file documents as a *pro se* litigant.  Ms. Alcantara again accused the Clerk's office of

treating her unfairly for requiring her to follow one of those three procedures instead of letting her

simply email documents to the Clerk's office for docketing.  She also threatened to sue the Clerk's

office for refusing to accept her email filings.

On May 6, 2024, Defendants submitted joint proposed trial and pre-trial conference dates.

Def.'s Joint Proposed Trial and Pre-Trial Conference Dates, ECF No. 180, at 2–3. However,

because Evelyn Ramirez was incapacitated as a result of an automobile accident, the Court stayed

this case to give her an opportunity to get better.  Order Staying Case, ECF No. 181, at 3.

In Defendant's joint proposed trial and pre-trial conference dates, they expressed concerns

that Ms. Alcantara may have made improper ex parte communications with the Court.  Def.'s Joint

Proposed Trial and Pre-Trial Conference Dates, ECF No. 180, at 2–3. After investigating the

matter, the Court concluded that Ms. Alcantara did engage in ex parte communications and thus

issued an Order, admonishing Ms. Alcantara for the fourth time not to communicate with the Court

*ex parte*.  Notice Regarding Pl.'s Ex Parte Communications, ECF No. 182, at 2.  In that Order, the

Court distinguished between Ms. Alcantara's permissible communications and impermissible

communications.  *Id.* at 14–18.  The Court determined that Ms. Alcantara's conversations with the

Clerk's office were permissible to the extent that she sought technical guidance regarding the

procedures for filing documents.  *Id.* at 15.  In concluding such, the Court relied on § 3A(4)(b),

---

[6] The Deputy Clerk does not remember the exact date.

which states, in part, that a federal judge may, "when circumstances require it, permit ex parte communication[s] for scheduling, administrative, or emergency purposes." *Id.* at 14–15; *see also* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4)(b).  The Court further explained that this exception only applies if the communications do not "addressive substantive matters," and only if "the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication."  Notice Regarding Pl.'s Ex Parte Communications, ECF No. 182, at 14–15; *see also* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4)(b).  The court determined that "if the court had delayed the trial based on the document Ms. Alcantara provided in an unauthorized ex parte communication, and which Defendants had never seen, that would have given Plaintiffs an unfair procedural advantage over Defendants."  Notice Regarding Pl.'s Ex Parte Communications, ECF No. 182, at 17.  Thus, because Ms. Alcantara's communication included a letter from Evelyn Ramirez's doctor and her purpose for sending the letter was to postpone the trial and to persuade the Court to reject Defendants' proposal to schedule the trial, the Court determined that her communications violated the Code of Conduct. *Id.* at 15–17.

Additionally, the Court determined that Ms. Alcantara's "ex parte communications threatening to sue the Court's employees unless they let her file documents via email absolutely sought a procedural or tactical advantage that she would not otherwise have, as no litigant in this Court pro se or otherwise has the right to file documents by simply emailing them to employees in the Clerk's office."  *Id.* at 17–18 (cleaned up); *see also* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4)(b).  Thus, the Court held that these communications also violated the Code of Conduct.  Notice Regarding Pl.'s Ex Parte Communications, ECF No. 182, at 18.  The Court explicitly stated it would "not tolerate any future attempts by Ms. Alcantara—ex parte or

otherwise—to bully the Court or its employees into creating special exceptions that apply to her and her alone." *Id.* at 17–18. (emphasis omitted).

The Court also explicitly stated that the notice served as Ms. Alcantara's "**final warning** not to communicate with the Court or its employees without including Defendants' attorneys." *Id.* at 2. The Court further chastised Ms. Alcantara that if she made any "ex parte communications that violate . . . the Judiciary's ethical rules going forward, the Court w[ould] consider imposing sanctions against" her, and that such sanctions could "include . . . dismissing [her] claims." *Id.* at 2–3.

### 5.    Ms. Alcantara's February 3, 2025 Letter

As indicated above, Ms. Alcantara was originally proceeding on her own behalf and on behalf of her daughter. On December 23, 2024, Carlos Ramirez—Evelyn's father—informed the Court that a county Probate Court declared Evelyn Ramirez "totally without capacity to care for herself or to manage her property" and therefore appointed him as her permanent guardian. Mot. Substitution, ECF No. 192, at 1. Mr. Ramirez thus moved to substitute himself in Evelyn's place in this case. *Id.* The Court initially denied Mr. Ramirez's Motion for several reasons. Order Denying Mot. Substitute Without Prejudice, ECF No. 193. For one, Mr. Ramirez did not provide the Court with a copy of the Probate Court's Order declaring Evelyn Ramirez incompetent and appointing him as her guardian. *Id.* at 2–3. Additionally, the Court ordered Carlos Ramirez to comply with Federal Rule of Civil Procedure 25, which requires the movant to serve a Motion to Substitute on all parties via a method of service authorized by Federal Rule of Civil Procedure 5. *Id.* at 2; *see also* FED. R. CIV. P. 25(b) (providing that a motion to substitute oneself in an incompetent plaintiff's place "must be served as provided in Rule 25(a)(3)"); FED. R. CIV. P. 25(a)(3) (providing in turn that the "motion to substitute, together with a notice of hearing, must

be served on the parties as provided in Rule 5"). Finally, Carlos Ramirez's Motion did not indicate whether he conferred with Ms. Alcantara before filing it. Order Denying Mot. Substitute Without Prejudice, ECF No. 193, at 3–4. Thus, the Court ordered Mr. Ramirez to file a renewed Motion to Substitute that corrected those defects. *Id.* at 4. The Court also emailed Ms. Alcantara a copy of its Order, thereby putting her on notice of Mr. Ramirez's initial Motion. *Id.* at 5.

On January 14, 2025, Mr. Ramirez filed a renewed Motion to Substitute in compliance with the Court's previous directions. Renewed Mot. Substitution, ECF No. 194. Mr. Ramirez attached a copy of the Probate Court's order declaring Evelyn Ramirez incompetent and appointing him as her permanent guardian. *Id.* at 4–11. The Motion's Certificate of Service also indicates that Mr. Ramirez served Ms. Alcantara a copy of his Motion *via* email the same day he filed it. *Id.* at 3. He also indicated that he conferred with Ms. Alcantara, and she opposed the Motion. Despite the indication that Ms. Alcantara opposed the motion, she did not respond to the Motion before her deadline to do so expired.[7] *See* Order Granting Carlos Ramirez's Mot. Substitute, ECF No. 195, at 2. The Court therefore granted Mr. Ramirez's Motion as unopposed. *See id; see also* W.D. Tex. L.R. CV-7(D)(2) (providing (with exceptions not relevant here) that a response to a motion "shall be filed not later than 14 days after the filing of the motion," and that "the court may grant the motion as unopposed" "[i]f there is no response filed within" the 14-day window).

The Court also ordered the parties to confer regarding their respective availabilities for pretrial conference and trial dates by February 20, 2025. *Id.* at 2. Rather than conferring with the parties, however, Ms. Alcantara mailed a letter addressed directly to me to the Court. The letter states the following:

---

[7] Mr. Ramirez filed his Motion on January 14, 2025. Ms. Alcantara's response was therefore due on January 28, 2025—14 days after she was served a copy of the Motion.

\*      \*      \*

Olga Alcantara
[Phone Number Redacted]
[Email Address Redacted]

Honorable Judge David Guaderrama
United States District Court
Western District of Texas
525 Magoffin Ave
El Paso, Texas 79901
February 3, 2025

Subject: Lack of Proper Service - Case No. EP-18-CV-00298-DCG

Dear Judge Guaderrama,

I am writing to formally inform the Court that I was not properly served in the above-reference [sic] case. I recently became aware of this legal proceeding, but I did not receive service in the manner that complies with the applicable rules of procedure. Because of this, I was not made aware of the case in a timely manner and was unable to respond appropriately.

Given that I was not properly served, I respectfully request that the Court vacate Order [sic] Granting Carlos Ramirez's Motion to Substitute.

Thank you for your time and consideration. I appreciate the Court's attention to this important procedural issue.

Sincerely,
Signed
Olga Alcantara

\*      \*      \*

Importantly, the letter contains no indication that Ms. Alcantara sent copies of the letter to the other parties in the case. As far as the letter reveals, Ms. Alcantara sent the letter to me and me alone. Nor did Ms. Alcantara make the other parties aware of the letter by filing it on the public docket *via* any of the filing methods that Court personnel have repeatedly instructed her to use.

The Court also hastens to emphasize that the Renewed Motion's Certificate of Service undermines Ms. Alcantara's assertion that she "was not properly served" with the Renewed Motion to Substitute.  As noted above, Mr. Ramirez's attorney certified that a "copy of the [Renewed Motion] was . . . sent to" Ms. Alcantara "via email correspondence" "on the 14th day of January, 2025."  *See* Renewed Mot. Substitution, ECF No. 194, at 3.  If that's true—which the Court need not decide because Ms. Alcantara's letter is an impermissible *ex parte* communication either way—then Mr. Ramirez did in fact validly serve Ms. Alcantara "in [a] manner that complies with the applicable rules of procedure" because she previously consented in writing to receive court filings *via* email.  *Compare* FED. R. CIV. P. 5(b)(2)(E) (authorizing litigants to serve filings by "sending [them] by . . . electronic means that the [recipient] consented to in writing," such as email), *with* Letter, ECF No. 164, at 2 ("*I consent to being served court filings via email . . . .*" (emphasis added)).  Thus, by all appearances, it's *Ms. Alcantara* who is attempting to deprive *Mr. Ramirez* of legal rights by failing to validly serve him with important legal documents—not the other way around.

### Ms. Alcantara's Refusal to Confer with Defendants

Defendants, however, complied with the Court's instruction and submitted proposed dates for a pretrial conference and trial dates.  Notice, ECF No. 197, at 1; Order Granting Carlos Ramirez's Mot. Substitute, ECF No. 195, at 2.  They also stated that they attempted to confer with Ms. Alcantara through email and she had not been responsive.  *Id.*  They provided the Court with three emails that were sent to Ms. Alcantara attempting to comply with the Court's instruction.  *Id.* at 4–10.

## DISCUSSION

### Ms. Alcantara's February 3, 2025 Letter

The Court must first determine whether Ms. Alcantara's February 3, 2025 letter constitutes an impermissible ex parte communication. In short, it does. That is because, "a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are outside the presence of the parties or their lawyers." CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4). Ms. Alcantara sent this letter to the Court pertaining to the "pending . . . matter" of this case without including Defendant's counsel or co-plaintiff's counsel, therefore violating the judiciary's ethical rules and the Court's previous order prohibiting this behavior. *See id; see also* Notice Regarding Pl.'s Ex Parte Communications, ECF No. 182, at 2. If the Court had vacated the substitution order without giving Mr. Ramirez notice or an opportunity to be heard, it would have given her "a procedural, substantive, or tactical advantage," which the Judicial Code of Conduct prohibits. *See* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4)(b). This letter also does not fall into any exception to the rule against ex parte communications. *See* CODE OF CONDUCT FOR UNITED STATES JUDGES § 3A(4)(a) (providing that a federal judge may "initiate, permit, or consider ex parte communications" if otherwise "authorized by law"); *id.* § 3A(4)(c) (specifying limited circumstances in which a federal judge may permissibly "obtain the written advice of a disinterested expert on the law"); *id.* § 3A(4)(d) (authorizing federal judges to "confer separately with the parties and their counsel in an effort to mediate or settle pending matters," but only if the parties consent).

Thus, Ms. Alcantara's letter contesting that Mr. Ramirez served her with his Motion to Substitute and attempting to persuade the Court to vacate its previous Order constitutes an

impermissible ex parte communication.  Further, her letter constitutes a violation of the Court's previous Order warning her of such.  *See* Notice Regarding Pl.'s Ex Parte Communications, ECF No. 182, at 2.

### Whether Dismissal is Appropriate

Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss a case on its own motion for failure to prosecute or for failure to comply with court orders.  *Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 844 (5th Cir. 2018).  "This authority is based on the courts' power to manage and administer their own affairs to ensure the orderly and expeditious disposition of cases."  *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) (cleaned up). Importantly, a court's authority is not diluted simply because a party is proceeding pro se, as "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Wright v. LBA Hosp.*, 754 F. App'x 298, 300 (5th Cir. 2019) (quoting *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991)); *see also Harned v. Fulton Cnty. Clerk of Ct.'s Off.*, No. 1:22-CV-03476, 2023 WL 6370237, at *1-2 (N.D. Ga. Apr. 3, 2023) (admonishing *pro se* litigant that "[c]ounsel and *pro se* parties" alike "are prohibited from engaging in *ex parte* communications with the Court or the Court's staff").

A court may not dismiss a case with prejudice under Rule 41(b) unless

(1)     "there is a clear record of delay or contumacious conduct by the plaintiff;" and

(2)     "the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile."

*Berry*, 975 F.2d at 1191 (citations omitted).  "[W]here a plaintiff has failed only to comply with a *few* court orders or rules," there is "no clear record of delay or contumacious conduct," but such a record may exist where the plaintiff "has failed to comply with *several* court orders or court rules."

*Id*. at 1191 n.6 (emphasis added) (citations omitted).  Finally, dismissal with prejudice is generally unwarranted unless "at least one of three aggravating factors" are present:

(1)    "delay caused by the plaintiff h[er]self and not h[er] attorney;"

(2)    "actual prejudice to the defendant;" or

(3)    "delay caused by intentional conduct."

*Id*. at 1191 (cleaned up).  In appropriate circumstances, however, a district court can dismiss a claim with prejudice when only the two requisite factors are present—that is, clear record of delay or contumacious conduct and lesser sanctions would not prompt more diligent prosecution—even when an aggravating factor does not exist.  *See Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 418 (5th Cir. 2006) ("We have stated that aggravating factors must 'usually' be found; we have not said they must 'always' be found.") (citation omitted).

### 1.  Clear Record of Delay or Contumacious Conduct

Ms. Alcantara's behavior falls under contumacious conduct rather than a clear record of delay.  The Fifth Circuit has instructed that it is not a party's negligence that makes conduct "contumacious"; rather, it is the "stubborn resistance to authority" which constitutes such and therefore justifies dismissal with prejudice.  *McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988); *see also Zellmar v. Warden, Gurney Unit*, 810 F. App'x 340, 341 (5th Cir. 2020).  Here, the Court issued multiple orders admonishing Ms. Alcantara for communicating with the Court ex parte and yet she insists on doing so.  As explained above, her behavior also violates the Judiciary's ethics rules.  Further, the Clerk's office educated Ms. Alcantara several times regarding how pro se litigants submit filings.  Thus, her blatant refusal to comply with the Court's orders is not simply a misunderstanding of how to properly submit filings, it is an egregious disregard of multiple Court orders.  Ms. Alcantara's behavior therefore satisfies the first prerequisite for dismissal under Rule

41(b)—that is, her conduct was contumacious.  *See Buchanan v. Barnes*, No. 22-20037, 2023 WL 2238026, *1, *2 (5th Cir. Feb. 23, 2023) (finding conduct to be "contumacious" when the plaintiff ignored three court orders); *see also Mayton v. Casas*, No. 20-50886, 2021 WL 1588508, *1, *2 (5th Cir. Apr. 22, 2021) (finding both delay and contumacious conduct when plaintiff refused to comply with court orders); *see also Joseph v. Moore*, No. 7:22-cv-0019, 2023 WL 6366572, at *15 (W.D. Va. Sept. 28, 2003) ("As the court has informed him repeatedly, [the plaintiff] is not to engage in any more ex parte communications with the court. Such communications prejudice the opposing party and undermine the integrity of the proceedings; when a plaintiff continuously disregards a court's orders not to engage in such communications, he engages in contumacious conduct that gives rise to involuntary dismissal." (emphasis added) (citations omitted)).

### 2. Lesser Sanctions Would Not Prompt More Diligent Prosecution

"When lesser sanctions have proved futile, a district court may properly dismiss a suit with prejudice."  *Hornbuckle v. Arco Oil & Gas Co.*, 732 F.2d 1233, 1237 (5th Cir. 1984) (citations omitted).  Such lesser sanctions include, for example, assessments of fines, costs, or damages, conditional dismissals, dismissals without prejudice, and explicit warnings by the court.  *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 966 F.3d 351, 360 (5th Cir. 2020).  Furthermore, "[p]roviding plaintiff with a second or third chance is itself a lenient sanction, which, when met with further default, may justify imposition of the ultimate sanction of dismissal with prejudice."  *Id.* (cleaned up).

Lesser sanctions here would not "serve the best interests of justice."  *Ben E. Keith Co. v. Dining Alliance, Inc.*, 80 F.4th 695, 703 (5th Cir. 2023).  Here, the assessment of fines, costs, or damages, are not an available option.  That is because Ms. Alcantara has asserted previously that travelling to El Paso (purchasing a plane ticket and lodging) to El Paso would "result in possible

homelessness."  Advisory, ECF No. 164, at 2.  *See Thrasher v. City of Amarillo*, 703 F.3d 509, 514 (5th Cir. 2013) (remarking that "monetary sanctions would have been fruitless" where the plaintiff "was proceeding *in forma pauperis*").

Further, as outlined above, the Court gave Ms. Alcantara four warnings to cease communicating with the Court ex parte.  The last warning explicitly stated that if Ms. Alcantara continued to do so, the Court would consider dismissing her claims.  Notice Regarding Pl.'s Ex Parte Communications, ECF No. 182, at 16–19.  It is therefore apparent any further lesser sanctions would be futile.  The second factor thus supports dismissal here.  *See Pennie v. Giorgi*, 841 F. App'x 655, 660 (5th Cir. 2021) ("When lesser sanctions have proved futile, a district court may properly dismiss a suit with prejudice.") (quotation omitted); *see also Dickerson v. Kock Foods, LLC*, No. 2:20-CV-163-ECM-KFP, 2022 WL 2912595, at *12 (M.D. Ala. July 15, 2022) ("Plaintiff has continued to call the undersigned's chambers after being informed that the court could not participate in ex parte communications about his case.  Plaintiff was forewarned that her continued behavior would result in dismissal, but she has been repeatedly and stubbornly defiant. . . . Because [the Plaintiff's] conduct demonstrates that she has no intention of complying with [the] court's multiple orders to stop her inappropriate behavior, the undersigned concludes that the only sanction sufficient under these circumstances is dismissal of this action with prejudice.") (cleaned up), *report and recommendation adopted by* 2022 WL 2873495 (July 21, 2022), *aff'd*, No. 22-12434, 2023 WL 5348897 (11th Cir. Aug. 21, 2023).

### 3.  Aggravating Factors

Finally, at least one of the three aforementioned aggravating factors is present. Specifically, the conduct in this case is attributable to Ms. Alcantara rather than an attorney, because she is litigating this case *pro se*.  *See* Thrasher, 709 F.3d at 514 (concluding that "[t]he first [aggravating]

19

factor [was] present" where the plaintiff "was representing himself" when he failed to comply with applicable procedural rules, and his noncompliance thus could not "be attributed to his attorney's inaction"). Dismissing this case with prejudice would therefore not punish an innocent client for an attorney's inaction, inattention, or affirmative misconduct.

## CONCLUSION

Because Ms. Alcantara has shown a repeated refusal to comply with this Court's simple direction to not communicate with the Court ex parte and her behavior is attributable to her and her alone, the Court **DISMISSES** her claims against Defendants **WITH PREJUDICE.**

Nothing in this Order affects Plaintiff Carlos Ramirez, *as Guardian of the Person and Estate of Evelyn Ramirez*, and this case shall therefore **REMAIN OPEN** with respect to his claims. The Court will soon issue an order setting a pretrial conference and a trial on Mr. Ramirez's remaining claims.

The Clerk of Court shall EMAIL a copy of this Order to:

Olga Alcantara
olgazel1133@gmail.com

**So ORDERED and SIGNED this 21st day of March 2025.**


**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**