# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **CARLOS RAMIREZ** *as Guardian of the Person and Estate of Evelyn Ramirez,* | § § § | |
| ***Plaintiff,*** | § § | |
| **v.** | § § | |
| **MARCO JASSO**, *#1888*; **JOSE RIVAS**, *#2985*; **RICARDO VILLAGRAN**, *#2882*; and **JANE DOE,** | § § § § § | **EP-18-CV-00298-DCG** |
| ***Defendants.*** | § § § | |

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR RELIEF FROM DISMISSAL ORDER

Despite receiving numerous admonitions not to send the Court *ex parte* communications in violation of the Judiciary's ethical rules[1]—including an unequivocal "final warning" that the Court would consider "dismissing [her] claims" if she continued "to communicate with the Court or its employees without including the other parties"[2]—*pro se* Plaintiff Olga Alcantara sent yet another *ex parte* communication to the Court on February 3, 2025.[3]  True to its word, the Court dismissed Ms. Alcantara's claims with prejudice on March 21, 2025.[4]

---

[1] *See, e.g.*, Dismissal Order, ECF No. 198, at 19 (recounting that "the Court gave Ms. Alcantara four warnings to cease communicating with the Court ex parte" before dismissing her claims).

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[2] *See* Notice Regarding Pl.'s *Ex Parte* Commc'ns, ECF No. 182, at 2–3.

[3] *See* Dismissal Order at 12–13; *see also infra* Section I.C.

[4] *See* Dismissal Order at 20.

Ms. Alcantara now asks the Court to reconsider its Order dismissing her claims.[5]  She

also asks the Court to stay the rapidly-approaching trial—as well as any settlement negotiations

between the remaining parties—while her Motion for Reconsideration is pending.[6]

For the following reasons, the Court **DENIES** Ms. Alcantara's Motion for

Reconsideration and **DENIES** her Motion to Stay as **MOOT**.

## I.    BACKGROUND

**A.    Ms. Alcantara's Repeated Attempts to Communicate *Ex Parte* with the Court**

As the Court has explained in greater depth elsewhere, Ms. Alcantara has impermissibly

attempted to communicate with the Court *ex parte* on numerous occasions throughout this case,[7]

including by:

> (1)    emailing documents to the Court that the other parties did not yet possess,
> and seeking favorable rulings based on those documents;[8]

> (2)    threatening to sue the Court's employees unless they gave her special
> privileges that no other litigant enjoys;[9] and

---

[5] *See* Mot. Recons., ECF No. 205.

[6] *See* Mot. Stay, ECF No. 204.

[7] *See* Notice Regarding Pl.'s *Ex Parte* Commc'ns at 4–9, 14–24; Dismissal Order at 3–16.

[8] *See* Notice Regarding Pl.'s *Ex Parte* Commc'ns at 6 (discussing how Ms. Alcantara emailed the Court documentation pertaining to her co-Plaintiff Evelyn Ramirez's medical condition without copying Defendants' counsel).

[9] *See id.* at 7 (describing a 2024 phone call "accus[ing] the Clerk's office of treating her unfairly for requiring her to follow" generally applicable filing procedures "instead of letting her simply email documents to the Clerk's office," and "threaten[ing] to sue the Clerk's office for refusing to accept email filings").

*See also id.* at 17–18 (explaining that "no litigant in this Court (*pro se* or otherwise) has the right to file documents by simply emailing them to employees in the Clerk's office," and warning Ms. Alcantara that "[t]he Court [would] not tolerate any further attempts . . . to bully the Court or its employees into creating special exceptions to the Court's procedures that apply to her and her alone" (emphases omitted)).

(3)     as especially relevant here,[10] sending letters addressed directly to the
undersigned Judge asking the Court to reconsider prior decisions without
notice to her opponents.[11]

Thus, on at least three separate occasions throughout 2023, the Court:

(a)     informed Ms. Alcantara that the Judiciary's ethical rules prohibit litigants
from communicating with the Court outside the other parties' presence;
and

(b)     admonished her not to make any further *ex parte* communications going
forward.[12]

## B.     Ms. Alcantara's "Final Warning"

Those admonishments proved ineffective.  Ms. Alcantara continued to communicate *ex
parte* with the Court on various occasions throughout 2024.[13]  Thus, on May 20, 2024, the Court
issued a Notice giving Ms. Alcantara her "final warning" that if she continued to "communicate
with the Court or its employees without including the other parties," the Court would consider
"dismissing [her] claims" in this case.[14]  That Notice further served as Ms. Alcantara's "final
warning" that if she sought "relief from the Court" at any time in the future, she would have to
"do so by filing a formal motion that complies with the Court's rules and procedures"—rather
than by sending the Court an *ex parte* communication.[15]

---

[10] *See infra* note 90 and accompanying text.

[11] *See* Notice Regarding Pl.'s *Ex Parte* Commc'ns at 22 ("In abject disregard of the Court's
August 18, 2023 order informing her that she couldn't directly communicate with the judge presiding
over her case, Ms. Alcantara drafted a letter addressed directly to me.  She then emailed that letter to the
Clerk's office—without copying the other parties—on August 21, 2023.  In that letter, Ms. Alcantara
asked me to reconsider my decision to hold [an upcoming] status conference in person rather than *via*
teleconference.").

[12] *See id.* at 19–24.

[13] *See id.* at 4–9.

[14] *See id.* at 2–3.

[15] *See id.*

C.    **Ms. Alcantara's Further *Ex Parte* Communications**

In direct contravention of that warning, Ms. Alcantara sent the Court yet another impermissible *ex parte* communication on February 3, 2025.[16]

As background, Ms. Alcantara's daughter Evelyn Ramirez was previously Ms. Alcantara's co-Plaintiff in this case.[17]  While this suit was pending, however, Ms. Ramirez was involved in an automobile accident that left her incapacitated.[18]  A county probate court therefore appointed Ms. Ramirez's father, Carlos Ramirez, as Ms. Ramirez's permanent guardian.[19]

In that capacity, Mr. Ramirez moved on December 23, 2024 to substitute himself in Ms. Ramirez's place as a named Plaintiff in this case.[20]  Notably, however, the Certificate of Service attached to that Motion contained no indication that Mr. Ramirez had served it on Ms. Alcantara as the Federal Rules of Civil Procedure require.[21]  Nor was there any indication that Mr. Ramirez conferred with Ms. Alcantara before filing the Motion as the Court's *Local* Rules require.[22]

---

[16] *See* Dismissal Order at 1, 12–14.

[17] *See, e.g.*, Pls.' 2d Mot. Withdraw, ECF No. 155, at 1.

[18] *See, e.g.*, Order Staying Case, ECF No. 181, at 2; Probate Court Order Appointing Permanent Guardian, ECF No. 194, at 6.

[19] *See* Probate Court Order Appointing Permanent Guardian at 6–9; *see also* Renewed Mot. Substitute, ECF No. 194, at 1 (identifying Mr. Ramirez and Ms. Ramirez's father).

[20] *See* Initial Mot. Substitute, ECF No. 192, at 1–2.

[21] *See id.* at 3; *see also* Order Denying Initial Mot. Substitute Without Prejudice, ECF No. 193, at 2–3; FED. R. CIV. P. 5(a)(1) (providing that "a written motion" "must be served on every party").

[22] *See* Initial Mot. Substitute at 2 (stating only that Mr. Ramirez's counsel conferred with *Defendants* before filing the Initial Motion to Substitute); *see also* Order Denying Initial Mot. Substitute Without Prejudice at 3–4.

*See also* W.D. TEX. L.R. CV-7(G) ("The court may refuse to hear or may deny a nondispositive motion unless the movant advises the court within the body of the motion that counsel for the parties have conferred in a good-faith attempt to resolve the matter by agreement and certifies the specific reason that no agreement could be made.").

Concerned that Ms. Alcantara may not have "had a fair opportunity to weigh in" on Mr. Ramirez's substitution requests, the Court denied the Initial Motion to Substitute without prejudice to Mr. Ramirez complying with the conferral requirement, filing a Renewed Motion by January 21, 2025, and timely serving that Renewed Motion on Ms. Alcantara.[23]  The Court made sure to forward Ms. Alcantara a copy of the Court's order denying the Initial Motion to Substitute,[24] so she'd be aware that Mr. Ramirez would be filing a Renewed Motion to Substitute in the near future.

Mr. Ramirez timely filed that Renewed Motion on January 14, 2025.[25]  The Renewed Motion states that Mr. Ramirez duly conferred with Ms. Alcantara before filing his renewed request, and that Ms. Alcantara "oppose[d] the proposed substitution."[26]

As especially important here, the Renewed Motion's Certificate of Service further states that one of Mr. Ramirez's attorneys served Ms. Alcantara with the Renewed Motion *via* email the same day she filed it.[27]  Federal Rule of Civil Procedure 5(b)(2)(E) normally disallows service *via* email unless the recipient has "consented to [email service] in writing."[28]  Here, however, Ms. Alcantara consented in writing "to being served court filings via email" on August

---

[23] *See* Order Denying Initial Mot. Substitute Without Prejudice at 4.

[24] *See id.* at 5.

[25] *See* Renewed Mot. Substitute at 3.

[26] *See id.* at 2.

[27] *See id.* at 3.

[28] *See* FED. R. CIV. P. 5(b)(2)(E).

22, 2023.[29]  The Certificate of Service indicates that Mr. Ramirez's counsel emailed the Motion to the same address that Ms. Alcantara provided on her written consent.[30]

Under the Court's Local Rules, Ms. Alcantara had until January 28, 2025 to respond to the Renewed Motion.[31]  Ms. Alcantara didn't file a response by that date.[32]  The Court was therefore authorized to grant the Renewed Motion as unopposed, notwithstanding the opposition to the proposed substitution that Ms. Alcantara had expressed to Mr. Ramirez's counsel during the conferral session.[33]  Satisfied that Ms. Alcantara had now received legally sufficient notice of Mr. Ramirez's request, the Court granted the Renewed Motion accordingly.[34]

On February 3, 2025, however, Ms. Alcantara mailed the Court a letter addressed directly to the undersigned Judge.[35]  In that letter, Ms. Alcantara asserted—contrary to the Renewed Motion's Certificate of Service—that she "did not receive service" of the Renewed Motion "in the manner that complies with the applicable rules of procedure."[36]  Ms. Alcantara therefore "request[ed] that the Court vacate [the] Order Granting Carlos Ramirez's Motion to Substitute."[37]

---

[29] *See* Letter, ECF No. 164, at 2.

[30] *Compare* Renewed Mot. Substitute at 3, *with* Letter at 2.

[31] *See* Order Granting Renewed Mot. Substitute, ECF No. 195, at 2 (citing W.D. TEX. L.R. CV-7(D)(2)).

[32] *See id.*

[33] *See* W.D. TEX. L.R. CV-7(D)(2) ("If there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed.").

[34] *See* Order Granting Renewed Mot. Substitute at 2.

[35] *See* Dismissal Order at 12–13.

[36] *See id.* at 13.

[37] *See id.*

Critically, however, the letter contained no indication that Ms. Alcantara sent copies of the letter to Mr. Ramirez or any of the other parties.[38]  It therefore appeared that Ms. Alcantara had ignored the Court's final warning and sent the Court yet another *ex parte* communication. Because "vacat[ing] the substitution order without giving Mr. Ramirez notice or an opportunity to be heard" would have given Ms. Alcantara an unfair "procedural, substantive, or tactical advantage" over Mr. Ramirez, the Court concluded that Ms. Alcantara's February 3, 2025 communication violated the Judiciary's ethics rules and the Court's prior orders.[39]

Thus, just as the Court warned Ms. Alcantara it would do if she continued communicating with the Court without including the other parties,[40] the Court dismissed Ms. Alcantara's claims with prejudice on March 21, 2025.[41]

---

[38] *See id.* ("Importantly, the letter contains no indication that Ms. Alcantara sent copies of the letter to the other parties in the case.  As far as the letter reveals, Ms. Alcantara sent the letter to me and me alone.  Nor did Ms. Alcantara make the other parties aware of the letter by filing on the public docket *via* any of the filing methods that Court personnel have repeatedly instructed her to use.").

[39] *See* Dismissal Order at 15–16.

[40] *See supra* Section I.B.

[41] *See* Dismissal Order at 20.

## II.    DISCUSSION

Invoking Federal Rule of Civil Procedure 60(b)—which authorizes a Court to "relieve a party . . . from a final . . . order" under specified circumstances[42]—Ms. Alcantara now asks the Court to reconsider its Order dismissing her claims.[43]  She specifically bases her Motion on:

(1)    Rule 60(b)(1), which empowers the Court to relieve a party from a court order due to "mistake, inadvertence, surprise, or excusable neglect";

(2)    Rule 60(b)(4), which affords relief if "the judgment is void"; and

(3)    Rule 60(b)(6), which authorizes the Court to relieve a party from a court order for "any other reason that justifies relief."[44]

### A.    Ms. Alcantara's Challenge to the Validity of Email Service

Ms. Alcantara spends much of her Motion challenging the premise that Mr. Ramirez validly served her with the Renewed Motion to Substitute by email.[45]  However, whether or not Mr. Ramirez validly served that Motion is irrelevant at this point.  If Ms. Alcantara wanted the Court to vacate its Substitution Order on the ground that she wasn't properly served, her proper

---

[42] *See* FED. R. CIV. P. 60(b).

[43] *See generally* Mot. Recons.

While there's technically "no such thing as a 'motion for reconsideration' under the Federal Rules of Civil Procedure," *see, e.g.*, *Van Dalsen v. Costello*, No. 4:23-cv-015, 2024 WL 3857897, at *1 (N.D. Ind. Aug. 19, 2024), courts and litigants frequently use that phrase as a catchall term for motions for relief from a court order—including motions for relief under Rule 60(b).  *See, e.g.*, *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004).  The Court will therefore refer to Plaintiff's Rule 60(b) Motion as a "Motion for Reconsideration" throughout this Order.

[44] *See* Mot. Recons. at 2–3; *see also* FED. R. CIV. P. 60(b)(1), (4), & (6).

[45] *See* Mot. Recons. at 2–3; *see also supra* Section I.C.

course of action would have been to *file a motion* asking the Court to reconsider the order[46] and *serve that motion on the parties*[47]—*not* to send the Court an *ex parte* communication.

Ms. Alcantara was well aware of that when she sent her February 3, 2025 letter.  By that date, the Court had already:

(1) informed her on at least four prior occasions that she may not "communicate with the Court or its employees without including the other parties";

(2) explicitly instructed her that if she wants "relief from the Court," she "must do so by filing a *formal motion* that complies with the Court's rules and procedures" rather than sending an *ex parte* communication; and

(3) given Ms. Alcantara her "final warning" that if she continued to "make[] ex parte communications . . . going forward," the Court would consider "dismissing [her] claims."[48]

Ms. Alcantara's claims were therefore subject to dismissal *regardless* of whether Mr. Ramirez validly served her with the Renewed Motion, because she had repeatedly violated court orders and judicial ethics rules despite multiple admonitions not to do so.[49]

In any event, serving the Renewed Motion by email *did* constitute proper service under the terms of Ms. Alcantara's written consent, notwithstanding her insistence to the contrary.  Ms. Alcantara first contends that her explicit written "consent to being served court filings via email"[50] was only intended to authorize the *Court* to serve her *orders* by email—*not* to authorize

---

[46] *See* FED. R. CIV. P. 7(b)(1) ("A request for a court order must be made by motion.").

[47] *See* FED. R. CIV. P. 5(a)(1) (providing (with exceptions not relevant here) that a motion "must be served on every party").

[48] *See* Notice Regarding Pl.'s *Ex Parte* Commc'ns at 2–3; *see also supra* Section I.B.

[49] *See* Dismissal Order at 14 (declining to decide whether Ms. Alcantara actually received the Motion to Substitute "because Ms. Alcantara's letter [was] an impermissible *ex parte* communication either way").

[50] *See* Letter, ECF No. 164, at 2.

the *parties* to serve her *motions* by email.[51]  But that's not what "court filings" means.  Legal dictionaries and caselaw both confirm that the phrase "court filings" covers not just orders issued by the Court, but also pleadings, motions, and other papers filed by the parties.[52]  If Ms. Alcantara had only intended to "consent to being served court *orders* via email," then she could have and should have said so.

Plaintiff next argues that her consent to email service doesn't apply to Mr. Ramirez's Motion to Substitute because her consent "was not part of a formal waiver, was not filed with the Court in connection to Mr. Ramirez's motion, and did not reference service of" motions to substitute.[53]  But Rule 5(b)(2)(E) doesn't require any of those additional formalities—it merely states that a litigant's consent to email service must be "in writing."[54]  Ms. Alcantara's "consent

---

[51] *See* Mot. Recons. at 2 ("To clarify, in ECF No. 164, Plaintiff stated: 'I consent to being served court filings via email.'  That statement was specifically intended to apply only to filings issued by the Court—not to filings or service attempts from opposing counsel or outside parties.  Plaintiff never provided written consent under Rule 5(b)(2)(E) to be served by attorneys or parties in this matter via email.").

[52] *See Filing*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "filing" as "[a] particular document *(such as a pleading)* in the file of a court clerk or record custodian" (emphasis added)); *id.* (providing the following illustrative example of a sentence properly using the term "filing": "[T]he lawyer argued that *the plaintiff's* most recent filing was not germane to the issue before the court" (emphasis added)).

*See also, e.g.*, *Shabazz v. Johnson*, 245 F.3d 790, 2000 WL 1910111, at *2 (5th Cir. Dec. 19, 2000) (concluding that party's "incarceration in administrative segregation ha[d] not prevented *him* from *making court filings* challenging the validity of his conviction" (emphases added)); *Schillereff v. Quarterman*, 304 F. App'x 310, 313 (5th Cir. 2008) (referring to "court filings *by inmates*" (emphasis added)).

[53] *See* Mot. Recons., ECF No. 205, at 2.

[54] *See* FED. R. CIV. P. 5(b)(2)(E) (stating that a paper may be served by "sending it by other electronic means that *the person consented to in writing*" (emphasis added)).

to being served court filings via email" was in writing,[55] so it was effective to authorize service of the Renewed Motion by email.

The Court's conclusion on that point likewise disposes of Ms. Alcantara's argument that Mr. Ramirez didn't validly serve the Motion to Substitute in accordance with Federal Rule of Civil Procedure 25,[56] which states that "[a] motion to substitute . . . must be served on the parties *as provided in Rule 5*."[57] Mr. Ramirez's service of the Motion to Substitute *via* email *did* comply with Rule 5,[58] so it complied with Rule 25 too.

Ms. Alcantara further claims that she "never received" the Renewed Motion[59]—even though the Certificate of Service attached to that Motion states that Mr. Ramirez's attorneys emailed it to her on January 14, 2025.[60] That claim is highly dubious, since Ms. Alcantara has

---

[55] *See* Letter at 2.

[56] *See* Mot. Recons. at 2 ("Furthermore, Rule 25(b)—governing substitution for incapacitated parties—requires strict compliance with service provisions. The rule mandates service under Rule 5(b) and ensures that parties whose participation is being changed have clear and direct notice. Plaintiff never received that opportunity.").

[57] FED. R. CIV. P. 25(a)(3) (emphasis added); *see also* FED. R. CIV. P. 25(b) ("If a party becomes incompetent, the court may, on motion, permit the action to be continued by or against the party's representative. *The motion must be served as provided in Rule 25(a)(3)*." (emphasis added)).

[58] *See supra* note 50–55 and accompanying text.

[59] *See* Mot. Recons. at 2.

[60] *See* Renewed Mot. Substitute at 3 (certifying "that on the 14th day of January, 2025," one of Mr. Ramirez's attorneys sent "a true and correct copy of the" Motion to Substitute to Ms. Alcantara "via email correspondence" to the email address listed on Ms. Alcantara's written consent to email service).

evidently received other documents emailed to that address.[61]  Most notably, the Court emailed its Dismissal Order to the exact same address to which Mr. Ramirez's counsel emailed his Renewed Motion[62]—which is also the exact same address that Ms. Alcantara listed on her written consent to email service,[63] and the exact same address that Ms. Alcantara provided in her Motion for Reconsideration's signature block.[64]  Ms. Alcantara clearly received the Dismissal Order, since she's now asking the Court to reconsider it.[65]  It's therefore likely that Ms. Alcantara received the Renewed Motion too.

The Court has considered the possibility that Ms. Alcantara *received* the email containing the Renewed Motion, but never *saw* it because her email account erroneously flagged it as spam. Even if the Motion to Substitute was "mistakenly [redirected] to a spam folder" in Ms. Alcantara's email account or was "not received due to faulty computer settings," however, that still would "not merit Rule 60(b) relief" under Fifth Circuit caselaw.[66]

---

[61] *Cf. Onwuchekwe v. Okeke*, 404 F. App'x 911, 912 (5th Cir. 2010) (concluding that "the district court did not abuse its discretion in doubting that [a litigant] never received [a particular] email" where the litigant apparently "had no difficulty receiving any other communications sent" to that same email address); *Int'l Shipping Agency, Inc. v. Union de Trabajadores de Muelles Loc. 1740*, No. 12-1996, 2014 WL 6836671, at *1 (D.P.R. Dec. 3, 2014) ("Defendants' counsel . . . consented to electronic service . . . Defendants . . . suggest that its [sic] counsel did not receive the requests by email, but the Court finds these claims . . . unbelievable.  After all, the email [address] to which the requests were sent was the same email to which the Court's docket notifications are sent, and Defendants' counsel has successfully responded to this Court's orders throughout the case.  It is altogether possible that Defendants' counsel did not *see* the email, but such an oversight would not excuse his clients' noncompliance.").

[62] *Compare* Dismissal Order at 20, *with* Renewed Mot. Substitute at 3.

[63] *See* Letter at 2.

[64] *See* Mot. Recons. at 4.

[65] *See generally id.* at 1–4.

[66] *See Smith-Hubbard v. AMICA Mut. Ins. Co.*, No. 23-40331, 2024 WL 747249, at *2 (5th Cir. Feb. 23, 2024) (cleaned up).

Moreover, even if it were true that Ms. Alcantara "never received" the Renewed Motion in her email account,[67] Ms. Alcantara still could not claim that the Order granting the Renewed Motion came as a "surprise" that would justify relief under Rule 60(b)(1).[68]  As noted, the Court ordered Mr. Ramirez to confer with Ms. Alcantara about his substitution request before filing the Renewed Motion,[69] and the Renewed Motion indicates that he did so.[70]  That conferral session thereby placed Ms. Alcantara on notice that Mr. Ramirez would be filing his Renewed Motion imminently—and, thus, that her 14-day clock to file a response registering her objection would soon start ticking down.[71]  Under Fifth Circuit caselaw, Ms. Alcantara had a duty to inquire about the Renewed Motion if she didn't receive it in her email inbox shortly after that conferral session.[72]  Her apparent failure to do so precludes Rule 60(b)(1) relief.[73]

---

[67] *See* Mot. Recons. at 2.

[68] *Contra* Fed. R. Civ. P. 60(b)(1).

[69] *See* Order Denying Initial Mot. Substitute Without Prejudice at 4 (permitting Mr. Ramirez to "file a renewed Motion to Substitute upon complying fully with . . . the conference requirement in Western District of Texas Local Rule CV-7(G)" (emphasis omitted)).

[70] *See* Renewed Mot. Substitute at 2 ("Olga Alcantara opposes the proposed substitution.").

[71] *See* W.D. Tex. L.R. CV-7(D)(2) (providing (with exceptions not relevant here) that a response to a motion is due "not later than 14 days after the filing of the motion").

*See also id.* ("If there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed.").

[72] *Cf. Smith-Hubbard*, 2024 WL 747249, at *2 ("We have repeatedly explained that parties have a duty of diligence to inquire about the status of a case. . . . [W]hatever the reason [the plaintiff's counsel] did not receive the emails [notifying him that the defendant had filed discovery requests and a motion for summary judgment], it did not relieve him of his duty of diligence to inquire about the status of [the plaintiff's] case." (cleaned up)).

[73] *Cf. id.* at *2–3 (concluding that "the district court did not abuse its discretion in denying [the plaintiff's] motion for relief from" a court order granting the defendant's summary judgment motion, even though plaintiff's counsel reportedly "did not receive the emails" notifying him that the defendant had filed that motion).

The Court has also considered the possibility that Mr. Ramirez's counsel *didn't* email the Renewed Motion to Ms. Alcantara *or* confer with her before filing the Motion, and that her certifications to the contrary in the Motion are untrue.  (To be absolutely clear, the Court has no reason to think that's the case—the Court is merely considering that possibility for the sake of argument.)  Even then, the Court's Order granting the Renewed Motion still wouldn't have come as a "surprise" that would justify Rule 60(b)(1) relief.[74]  As discussed,[75] the Court denied Mr. Ramirez's *Initial* Motion to Substitute because there was no indication that Ms. Alcantara had received it, and the Court wanted to make sure she "had a fair opportunity to weigh in" on the substitution request.[76]  The Court forwarded that Order to Ms. Alcantara,[77] thereby placing her on notice not just that Mr. Ramirez was trying to substitute himself in Ms. Ramirez's place,[78] but also that he'd be filing a Renewed Motion to Substitute on or before January 21st.[79]

Thus, even if Mr. Ramirez's counsel had never contacted Ms. Alcantara about the Renewed Motion at all—a possibility that strikes the Court as extremely unlikely—Ms. Alcantara still could not credibly claim that she had no idea that Mr. Ramirez would file a renewed substitution request on January 14, 2025.[80]  Nor could she claim that the Court blindsided her when it granted that request on January 29, 2025.[81]  Again, Ms. Alcantara had a

---

[74] *Contra* FED. R. CIV. P. 60(b)(1).

[75] *See supra* notes 20–23 and accompanying text.

[76] *See* Order Denying Initial Mot. Substitute Without Prejudice at 2–4.

[77] *See id.* at 5.

[78] *See id.* at 2.

[79] *See id.* at 4.

[80] *See* Renewed Mot. Substitute at 3.

[81] *See* Order Granting Renewed Mot. Substitute at 2–3.

legal duty to inquire about the Renewed Motion if she didn't receive it by the January 21, 2025 deadline set in the Order that the Court sent to her, and her apparent failure to do so forecloses her from obtaining Rule 60(b)(1) relief.[82]

In sum, none of Ms. Alcantara's arguments pertaining to the service of Mr. Ramirez's Renewed Motion gives the Court any reason to doubt the propriety of dismissing her claims.

## B.    Ms. Alcantara Did Not Send the *Ex Parte* Letter in Good Faith

Ms. Alcantara next insists that her *ex parte* letter was "not a violation" of the prohibition against *ex parte* communications, but rather "a good faith effort to preserve her due process rights and alert the Court to a potential procedural defect" related to the service of Mr. Ramirez's Renewed Motion.[83]  Ms. Alcantara insists that her "letter was not meant to gain advantage" over Mr. Ramirez, but rather "to preserve fairness and raise valid concerns of defective service."[84]

The Court disagrees.  As recounted above,[85] Ms. Alcantara has *repeatedly* attempted to gain an advantage over the other parties by making *ex parte* communications with the Court and

---

[82] *See supra* notes 72–73 and accompanying text.

[83] *See* Mot. Recons. at 2.

[84] *See id.* at 3.

[85] *See supra* Section I.A.

its employees.[86]  Her most recent attempt to do so was no different, as the Court has already

explained at length in its Dismissal Order.[87]

Nor can Ms. Alcantara claim that she made a "good faith" mistake because she didn't

know any better.[88]  Again, the Court had already given Ms. Alcantara her "final warning that if

she [sought] relief from the Court" in the future, she would have to "do so by filing a formal

motion that complie[d] with the Court's rules and procedures"—not by "communicat[ing] with

the Court or its employees without including the other parties."[89]  Indeed, the Court had already

---

[86] *See* Notice Regarding Pl.'s *Ex Parte* Commc'ns at 16–17 ("[Ms. Alcantara] forwarded the Clerk's office a doctor's note containing information about Ms. Ramirez's medical status that wasn't part of the official judicial record, and which (at least at that time) Ms. Alcantara hadn't provided to Defendants.  Ms. Alcantara's purpose for sending the Court that extrinsic evidence appears to have been to persuade the Court to reject Defendants' proposal to schedule this case for a trial in late 2024, and to instead postpone the trial for 11 months or more. . . . If the Court had delayed the trial based on a document that Ms. Alcantara had provided the Court in an unauthorized ex parte communication, and which Defendants had never seen, *that would have given Plaintiffs an unfair procedural advantage over Defendants*.  Thus, to the extent Ms. Alcantara's ex parte communications contained extrinsic evidence about Ms. Ramirez's health status, and to the extent Ms. Alcantara sought to influence the Court's decisions based on that evidence, her ex parte communications violated the Code of Conduct." (emphasis added)).

*See also id.* at 17–18 ("[T]o the extent Ms. Alcantara made ex parte communications threatening to sue the Court's employees unless they let her file documents *via* email, *her ex parte communications absolutely sought a procedural or tactical advantage that she wouldn't otherwise have*, as *no* litigant in this Court (*pro se* or otherwise) has the right to file documents by simply emailing them to employees in the Clerk's office.  Those ex parte communications therefore violated the Code of Conduct." (first emphasis added; other emphases in original)).

[87] *See* Dismissal Order at 15 ("If the Court had vacated the substitution order without giving Mr. Ramirez notice or an opportunity to be heard, it would have given [Ms. Alcantara] 'a procedural, substantive, or tactical advantage,' which the Judicial Code of Conduct prohibits." (quoting CODE OF CONDUCT FOR UNITED STATES JUDGES Canon 3A(4)(b))).

[88] *Contra* Mot. Recons. at 2.

[89] *See* Notice Regarding Pl.'s *Ex Parte* Commc'ns at 2–3 (emphases omitted); *see also supra* Section I.B.

scolded Ms. Alcantara for doing the *exact same thing* she did here—sending an *ex parte* letter addressed directly to the undersigned Judge asking the Court to modify an earlier order.[90]

Thus, Ms. Alcantara's deliberate decision to ignore that final warning and make further *ex parte* communications wasn't some good faith "mistake," "inadvertence," or "excusable neglect" that might warrant relief under Rule 60(b)(1).[91]  Nor can she claim that the Dismissal Order came as a "surprise,"[92] since the Court had already told her in no uncertain terms that it would consider "dismissing [her] claims" if she made any further "communicat[ions] with the Court or its employees without including the other parties."[93]  Rule 60(b)(1) simply does not

---

[90] *See* Notice Regarding Pl.'s *Ex Parte* Commc'ns at 22 ("In abject disregard of the Court's August 18, 2023 order informing her that she couldn't directly communicate with the judge presiding over her case, Ms. Alcantara drafted a letter addressed directly to me.  She then emailed that letter to the Clerk's office—without copying the other parties—on August 21, 2023.  In that letter, Ms. Alcantara asked me to reconsider my decision to hold [an upcoming] status conference in person rather than *via* teleconference.").

    *See also* Letter at 1–2 ("*Dear Judge Guaderrama* . . . . I please ask the court to allow us a video conference due to recent sudden financial issues." (emphasis added)).

    *See also* Notice Regarding Pl.'s *Ex Parte* Commc'ns at 23 (reprinting email from the Court's Career Law Clerk stating the following: "Dear Ms. Alcantara, As I informed you in my previous email, the federal Judiciary's ethical rules forbid the Court from considering informal communications from litigants outside the presence of their opponents.  The Court thus cannot consider your letter. . . . If you would like the Court to reconsider its order setting an in-person status conference for September 13, 2023 instead of a videoconference, you must file a formal motion that complies with the Western District of Texas's Local Rules and all other applicable laws.").

    *But see* Dismissal Order at 13 (reprinting Ms. Alcantara's February 3, 2025 letter, which states: "*Dear Judge Guaderrama* . . . I am writing to formally inform the Court that I was not properly served in the above-reference [sic] case. . . . Given that I was not properly served, *I respectfully request that the Court vacate Order [sic] Granting Carlos Ramirez's Motion to Substitute*." (emphases added)).

[91] *Contra* FED. R. CIV. P. 60(b)(1).

[92] *Contra id.*

[93] *See* Notice Regarding Pl.'s *Ex Parte* Commc'ns at 2–3.

permit a party to avoid "the consequences of decisions deliberately made"—even if "subsequent events reveal that such actions were unwise."[94]

## C.    Dismissal With Prejudice Was an Appropriate Sanction

The Court also rejects Ms. Alcantara's argument that dismissing her claims with prejudice was "a disproportionate sanction" for her repeated misconduct.[95]  As the Court noted in its Order,[96] courts have dismissed the claims of other plaintiffs who continued to make *ex parte* communications despite receiving multiple warnings that doing so could result in dismissal,[97] just like Ms. Alcantara did here.

Ms. Alcantara also argues that because dismissal with prejudice is such a "severe sanction," it "should only be imposed where no lesser alternative would suffice."[98]  She ignores, however, that the Court explicitly explained in its Dismissal Order why no lesser alternative to a full dismissal with prejudice would suffice here.[99]  The Court concluded in that Order that "the assessment of fines, costs, or damages" was "not an available option" because Ms. Alcantara

---

[94] *See, e.g.*, *Def. Distributed v. U.S. Dep't of State*, 947 F.3d 870, 873 n.2 (5th Cir. 2020) (quoting *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 418 (5th Cir. 2018)).

[95] *Contra* Mot. Recons. at 4.

[96] *See* Dismissal Order at 19.

[97] *See Dickerson v. Koch Foods, LLC*, No. 2:20-CV-163-ECM-KFP, 2022 WL 2912595, at *12 (M.D. Ala.) ("Plaintiff has continued to call the undersigned's chambers after being informed that the court could not participate in ex parte communications about this case.  Plaintiff was forewarned that her continued behavior would result in dismissal, but she has been repeatedly and stubbornly defiant. . . . Because [the plaintiff's] conduct demonstrates that she has no intention of complying with [the] court's multiple orders to stop her inappropriate behavior, the undersigned concludes that the only sanction sufficient under these circumstances is dismissal of this action with prejudice." (cleaned up)), *report and recommendation accepted by* 2022 WL 2873459 (M.D. Ala. July 21, 2022), *aff'd*, No. 22-12434, 2023 WL 5348897 (11th Cir. Aug. 21, 2023).

[98] *See* Mot. Recons. at 3.

[99] *Compare id.*, *with* Dismissal Order at 18–19.

probably wouldn't be able to afford them.[100]  The Court likewise reasoned that the lesser

sanction of "explicit warnings by the court" wouldn't be adequate, since the Court had *already*

given Ms. Alcantara "four warnings to cease communicating with the Court ex parte"—to no

apparent effect.[101]  Because lesser sanctions had already "proved futile," it was well within the

Court's discretion to dismiss Ms. Alcantara's claims with prejudice.[102]

### D.    The Court's Dismissal Order Isn't Void

The Court also rejects Ms. Alcantara's argument that the Dismissal Order "is void" and

must therefore "be vacated pursuant to Federal Rule of Civil Procedure 60(b)(4)."[103]

"Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a

certain type of jurisdictional error or on a violation of due process that deprives a party of notice

or the opportunity to be heard."[104]  Relying on the "due process" prong of that test,[105] Ms.

Alcantara claims that the Dismissal Order amounts to "a clear due process violation under the

Fifth Amendment" because she "was not provided with notice and a meaningful opportunity to

respond before her claims were dismissed with prejudice."[106]

---

[100] *See* Dismissal Order at 18–19.

[101] *See id.*

[102] *See id.* (quoting *Hornbuckle v. Arco Oil & Gas Co.*, 732 F.2d 1233, 1237 (5th Cir. 1984)).

[103] *See* Mot. Recons. at 3.

*See also* FED. R. CIV. P. 60(b) ("On motion and just terms, the court may relieve a party . . . from a final . . . order . . . for the following reasons: . . . . (4) the judgment is void . . . .").

[104] *E.g.*, *SEC v. Novinger*, 40 F.4th 297, 302 (5th Cir. 2022) (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)).

[105] *See* Mot. Recons. at 3.

[106] *See id.*

Ms. Alcantara's assertion that she "was not provided with notice . . . before her claims were dismissed with prejudice" is patently false.[107]  Once again, "the Court gave Ms. Alcantara four warnings to cease communicating with the Court ex parte"[108]—culminating in an unequivocal "final warning" that any further *ex parte* communications could result in the dismissal of her claims[109]—before the Court finally dismissed those claims with prejudice. Thus, Ms. Alcantara not only had unambiguous notice that the Court might dismiss her claims if she persisted; she also had a more than fair chance to avoid the sanction that the Court ultimately imposed.  Ms. Alcantara thus received all the process she was due here.

Ms. Alcantara also claims that the Dismissal Order is void because she "was never properly served with the Renewed Motion to Substitute under Rule 5(b)(2)(E)."[110]  As explained above, that's probably untrue.[111]  And even if that *were* true, that would at most provide a potential basis to reconsider the *Substitution* Order—*not* the *Dismissal* Order.[112]  As discussed, Ms. Alcantara's claims are subject to dismissal due to her repeated violations of the Court's orders and ethical rules, and that would remain true even if Ms. Alcantara were correct that Mr. Ramirez never validly served her with the Renewed Motion.[113]

---

[107] *Contra id.*

[108] *See* Dismissal Order at 19.

[109] *See* Notice Regarding Pl.'s *Ex Parte* Commc'ns at 2–3 (emphasis omitted).

[110] *See* Mot. Recons., ECF No. 205, at 3.

[111] *See supra* Section II.A.

[112] The Court sees no reason to reconsider the Substitution Order now that the Court has dismissed Ms. Alcantara from the case, since the remaining parties don't object to Mr. Ramirez substituting himself on Ms. Ramirez's behalf.  *See* Renewed Mot. Substitute at 2 ("Counsel for Defendants were contacted about this Motion and do not oppose the relief sought by Carlos Ramirez.").

[113] *See supra* note 49 and accompanying text.

**E.      Ms. Alcantara Isn't Entitled to Relief Under Rule 60(b)(6)**

Nor is Ms. Alcantara entitled to relief under Rule 60(b)(6),[114] which is a catch-all provision that permits the Court to "relieve a party . . . from a final . . . order" for "any other reason that justifies relief" besides those explicitly enumerated in Rule 60(b)(1)–(5).[115]

"Relief under Rule 60(b)(6) is available only in extraordinary circumstances."[116]  "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors," including "the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process."[117]

No such extraordinary circumstances are present here.  Dismissing Ms. Alcantara's claims *promotes* (rather than undermines) the public's confidence in the judicial process, because it reinforces the ethical principle that litigants can't obtain an advantage over their opponents by making secret communications with the Judge behind their adversaries' backs.  And while it's true that dismissing Ms. Alcantara's claims will leave her without any chance of recovery here,[118] that outcome isn't unjust, since it results entirely from Ms. Alcantara's purposeful, repeated misconduct.

---

[114] *Contra* Mot. Recons. at 2–3 (claiming the contrary).

[115] FED. R. CIV. P. 60(b).

[116] *E.g.*, *Johnson v. Davis (In re Johnson)*, 935 F.3d 284, 289 (5th Cir. 2019) (cleaned up).

[117] *E.g.*, *Buck v. Davis*, 580 U.S. 100, 123 (2017) (cleaned up).

[118] *See* Mot. Recons. at 3 (urging the Court "to consider that her claims involve long standing [sic] constitutional concerns and should be addressed on their merits").

Ms. Alcantara offers no other reason (extraordinary or otherwise) for granting her relief under Rule 60(b)(6) besides the ones the Court has already rejected above.[119]  She's therefore not entitled to relief under that provision.[120]

## F.    The Court Denies Ms. Alcantara's Motion to Stay

One final issue remains.  A trial on Mr. Ramirez's claims against Defendants—which, unlike Ms. Alcantara's claims, remain live—is scheduled to begin on September 29, 2025.[121]  Although the Court has no personal knowledge on the matter, it's possible that the remaining parties are (or will be) negotiating a settlement to obviate any need for a trial.  Ms. Alcantara therefore asks the Court to "stay all trial and settlement proceedings in this case pending the resolution of her Motion" challenging the order dismissing her claims.[122]

Because the Court has resolved Ms. Alcantara's Motion for Reconsideration above, however, her Motion to Stay the proceedings until the Court rules on that Motion is now moot.  The Court will therefore deny the Motion to Stay accordingly.

---

[119] *See id.* at 2–3.

[120] *See, e.g.*, *Webb v. Davis*, 940 F.3d 892, 899 (5th Cir. 2019) (explaining that where a litigant "assert[s] the same grounds for relief under Rule 60(b)(6) as [she does] under Rule 60(b)(1)," she "cannot obtain relief under 60(b)(6)" because "[t]he reason for relief set forth under 60(b)(6) cannot be the reason for relief sought under another subsection of 60(b)" (quoting *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 643 (5th Cir. 2005))).

[121] Pretrial, Trial, & Posttrial Order, ECF No. 200, at 1.

[122] Mot. Stay at 2.

### III.    CONCLUSION

The Court **DENIES** former Plaintiff Olga Alcantara's "Corrected Motion for Reconsideration of Order Dismissing Plaintiff's Claims Under Rule 60(b)(1), 60(b)(4), and 60(b)(6)" (ECF No. 205) for the reasons stated above.

Having done so, the Court **DENIES** Ms. Alcantara's "Corrected Emergency Motion to Stay Any Trial or Settlement Pending Resolution of Rule 60(b) Motion" (ECF No. 204) as **MOOT**.

The Clerk of Court shall **EMAIL** a copy of this Order to:[123]

Olga Alcantara
olgazel1133@gmail.com

**So ORDERED and SIGNED this 6th day of May 2025.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[123] *See* Letter at 2 (Plaintiff's written "consent to being served court filings"—including, but *not* limited to, court orders—"via email").